DILLARD DEPARTMENT STORES,
INC., Plaintiff,

v.

APPLICATION ART LABORATORIES
CO. and Randolph Rand Corp.,
Defendants.

No. 91 Civ. 1366 (VLB).

United States District Court,
S.D. New York.

Jan. 14, 1992.

John D. Murnane, Brumbaugh, Graves, Donohue & Raymond, New York City, for plaintiff.

Jeffrey A. Schwab, Abelman Frayne & Schwab, Colamarino & Magashima, New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

Plaintiff Dillard Department Stores Inc. ("Dillard"), an owner and operator of department stores in the United States, brought this action for a declaratory judgment of patent invalidity, unenforceability and non-infringement with respect to United States Patent Number 4,021,891 (the "891 Patent") against Application Art Laboratories Company ("Application Art") and Randolph–Rand Corporation ("Randolph–Rand"). The 891 Patent concerns a magnetic locking device which is utilized on women's handbags and similar items.

Application Art, a Japanese Corporation having its principal place of business in Japan, owns the 891 Patent. Randolph–Rand, a Delaware corporation with its only place of business in New York, is the exclusive licensee and distributor of the 891 Patent in the United States.

The dispute concerning the 891 Patent has a long history. Beginning in 1983,

Randolph–Rand asserted that Dillard was unlawfully selling magnetic handbag snaps covered by the 891 patent. After several written communications between the parties, Dillard and Randolph–Rand undertook to settle their differences through an arrangement under which Dillard agreed to purchase labels from Randolph–Rand bearing the 891 Patent number and to affix them to items it sold using the disputed magnetic locking device. Dillard initially paid 25 cents for each label and in subsequent years paid similar label purchase prices. The settlement between the parties was memorialized in a letter agreement in 1985 (the "Settlement Agreement").

In 1986 Randolph–Rand brought suit against Dillard in New York State court, alleging that the company had breached the terms of the Settlement Agreement. This action was settled by Dillard's agreement to pay $5000 for 20,000 additional 891 Patent labels. During the same year, several claims with respect to the 891 Patent were rejected and amendments to the claims were made in reexamination proceedings before the United States Patent Office. Randolph–Rand assisted Application Art in its work on these reexamination proceedings.

During 1987 and 1988, Dillard purchased additional 891 patent labels from Randolph–Rand, and also purchased magnetic snaps directly from Application Art. In 1988, Randolph–Rand again brought suit against Dillard in New York State court alleging breach of the Settlement Agreement. This action was settled by Dillard's payment of $4500 in "back fees" for 891 Patent labels. During 1989 and 1990 Dillard purchased additional labels from Randolph–Rand. Then on May 29, 1990 Randolph–Rand asserted in a letter to Dillard that Dillard was again infringing the 891 Patent, and it demanded an accounting by Dillard of all sales of infringing products since 1986.

Dillard asserts that at that point it decided to investigate, for the first time, the validity of the 891 Patent; it discovered a number of reasons why the 891 Patent might not be valid.

On September 17, 1990 Randolph–Rand again sued Dillard in New York State court for infringing the 891 Patent. Dillard then commenced a federal court action in Arkansas against Randolph Rand and Application Art seeking an adjudication of the validity of the 891 Patent: it sought and obtained a stay of the New York State case pending a resolution of the Arkansas action. The Arkansas action was, however, dismissed for lack of personal jurisdiction. Dillard then commenced this action. Randolph–Rand's state court action has been stayed by the state court at Dillard's request pending the outcome of this action.

Randolph–Rand has moved to dismiss Dillard's complaint pursuant to Federal Rules of Civil Procedure 12 and 19 on the grounds that this court does not have personal jurisdiction over defendant Application Art, and that Application Art is a necessary party to this action.[1] Alternatively, Randolph–Rand argues that Dillard is estopped from contesting the validity of the 891 Patent by virtue of what Randolph–Rand characterizes as Dillard's previous acknowledgment of the patent's validity through the Settlement Agreement and Dillard's subsequent actions. For the reasons which follow, defendants' motion to dismiss is denied.

## II

The personal jurisdiction of the court in this diversity action is governed by the provisions of the New York Civil Practice Law and Rules (the "CPLR"). *See Hoffritz For Cutlery, Inc. v. Amajac, Ltd.,*

---

1. Randolph–Rand initially asserted in its moving papers that this court did not have personal jurisdiction over Application Art because the company was never properly served in Japan pursuant to the requirements of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). Dillard, however, has asserted without contradiction by Randolph–Rand that it served Application Art in this action by registered mail in compliance with the requirements of the Hague Convention. That portion of defendants' motion which seeks dismissal on the basis of improper service of process is thus denied.

763 F.2d 55, 57 (2d Cir.1985). Personal jurisdiction over Application Art could arise in this case under one of two provisions of the statute. Under CPLR § 301, jurisdiction could be obtained over Application Art if it were found by itself or through an agent to be "doing business" in this state. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194 (2d Cir.1990), *cert. denied* —— U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116. Alternatively, under New York's "long-arm" statute, (CPLR § 302) jurisdiction would be proper *inter alia* if Application Art, by itself or through an agent, were found to have transacted business within the state or to have contracted to supply goods or services within the state, if the instant cause of action were found to have arisen from such activity. Since no jurisdictional discovery has apparently been conducted and no evidentiary hearing has been held, plaintiff need make only a prima facie showing that jurisdiction is proper to defeat the lack of jurisdiction aspect of defendants' motion. *See Ball v. Metallurgie Hoboken–Overpelt S.A., supra*, 902 F.2d at 196.

Plaintiff's complaint appears to allege that jurisdiction is proper under both CPLR § 301 and 302, not because of the direct actions of Application Art but because Randolph–Rand has essentially acted as Application Art's agent in New York. Cases interpreting the showing necessary in order to find that personal jurisdiction under New York law is proper under an agency theory have traditionally adopted a number of varying tests. *See* N.Y.Civ.Prac. Law § 302 Practice Commentaries, C302.3. In 1988, however, the New York Court of Appeals held that in order to establish an agency relationship for purposes of New York's long-arm statute, "Plaintiff need not establish a formal agency relationship" between a party subject to jurisdiction in New York and a foreign defendant: the requisites of long-arm jurisdiction over the foreign defendant under an agency theory will be satisfied where the New York resident engages in purposeful activities in the state in relation to the transaction which is the subject of suit, if such activities are for the benefit of, and with the knowledge and

consent of, the foreign defendant, and if that foreign defendant exercises some degree of control over the activities of the New York party. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 199, 522 N.E.2d 40, 44 (1988) *See also CutCo Industries v. Naughton*, 806 F.2d 361, 366 (2d Cir.1986). (In considering agency questions under the long-arm statute, "courts have focused on the realities of the relationship in question rather than the formalities of agency law.")

The record which has been developed thus far indicates that Randolph–Rand from its base in New York has over a period of years performed various deliberate actions for Application Art which, when considered together, are sufficient to indicate that Randolph–Rand has for all practical purposes acted as Application Art's agent here. It is not disputed that Randolph–Rand is the sole licensee and exclusive distributor of products covered by the 891 Patent in the United States. Randolph–Rand's actions on behalf of Application Art, however, have extended beyond exclusive licensing and distribution. Randolph–Rand has asserted in written communications to Dillard that it is "the party authorized to resolve matters relating to the Patent's infringement in the United States" and Randolph–Rand, rather than Application Art, appears to be the party which has taken the leading role in the extensive legal battles in this country over the 891 Patent against Dillard and other parties. Indeed, Randolph–Rand has apparently brought patent infringement actions in New York State concerning the 891 Patent without Application Art having initially appeared as a plaintiff in the actions. Dillard asserts that one of Application Art's lawyers represents Randolph–Rand in this action.

Randolph–Rand has assisted Application Art in proceedings before the United States Patent Office concerning the validity of the 891 Patent. Its written communications to Dillard have been phrased in terms which suggest the comprehensive role Randolph–Rand has played in policing Application Art's patent in this country. In reporting

to Dillard on the status of litigation brought by the 891 Patent's inventor to declare the invalidity of the patent, for example, Randolph–Rand has referred to "our campaign to enforce our rights" under the patent and noted the legal victories which "our company has won" without even mentioning Application Art's role, if any, in the litigation.

In addition to its contacts with this state through its agent Randolph–Rand, Application Art also ships magnetic labels directly into the state of New York.

In sum it appears that Dillard's assertions concerning Randolph–Rand's role as the long time sole licensee and distributor for the 891 Patent and as the entity responsible for policing the use of this patent in the United States are sufficient to establish, prima facie, that Randolph–Rand is Application Art's "agent" for purposes of the New York long-arm statute.[2]

In order to satisfy the requirements of the long-arm statute, it must also be shown that there is an "articulable nexus" or "substantial relationship" between the transaction of business in New York and the cause of action in which jurisdiction is alleged. *Beacon Enterprises Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir.1983). Randolph–Rand, a company with its only place of business in New York which has instituted a number of actions in this state, is clearly transacting business here. Its activities in New York as the licensee, distributor and enforcer of the 891 patent are directly related to the dispute in the instant action.

I hold that this court has personal jurisdiction over Application Art in this suit by virtue of the transaction of business by Application–Art's agent in this state pursuant to CPLR § 302(a)(1).

### III

■ Randolph–Rand argues that even if this court has personal jurisdiction over Application Art in this action, plaintiff should be estopped from challenging the validity of the 891 Patent by virtue of the Settlement Agreement and subsequent actions by Dillard in agreeing to pay Randolph–Rand for patent labels it has affixed to its products using the magnetic locking devices. In making this argument, defendant primarily relies upon the doctrine of assignor estoppel. *See Diamond Scientific Co. v. Ambico Inc.*, 848 F.2d 1220 (Fed.Cir.1988). Under the assignor estoppel doctrine, a party who has held and assigned the rights to a patent may be estopped from later contesting the validity of the patent if unfairness or injustice to the assignee would result. *Diamond Scientific Co., supra*, 848 F.2d at 1225–1225. Defendant alternatively argues that the Settlement Agreement and Dillard's later actions are the equivalent of a consent decree by Dillard in which Dillard acknowledged the validity of the 891 Patent. Relying upon the doctrine of res judicata, defendant apparently argues that the issue of the 891 Patent's validity was determined in the Settlement Agreement and affirmed by Dillard's later actions and that Dillard should therefore be foreclosed from contesting the validity of the 891 Patent here. *See Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574 (Fed.Cir.1989).

■ Neither of these arguments is persuasive. Dillard is not an assignor of the 891 Patent, nor a party to whom the doctrine of assignor estoppel is applicable. In *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), moreover, the Supreme Court abolished the doctrine of licensee estoppel under which previous case law had held that licensees were generally estopped from contesting the validity of patents they were licensed to use. Reasoning that "the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the

2. Courts have recognized that the relationship between a patent owner and an exclusive licensee can also be analogized to the relationship between a trustee and a beneficiary. As one court noted, "When a patent owner grants [an exclusive license] he holds the patent in trust for the licensee and must permit the licensee to sue in his name." *Cilco v. Copeland Intralenses Inc.*, 614 F.Supp. 431, 433–434 (S.D.N.Y.1985).

public domain" the court held that in the usual case, the doctrine of estoppel could not be utilized to bar a patent validity challenge by a patent licensee. *Lear, supra,* 395 U.S. at 670, 89 S.Ct. at 1911.

In the instant action, plaintiff is not a licensee of the 891 Patent. Nevertheless, the reasoning of *Lear* and the case law holding that assignor estoppel is not applicable in every instance are instructive here. If an assignor of a patent may in appropriate cases contest its validity, and a licensee may normally do so, surely plaintiff here, a purchaser of patent labels whose status did not rise to the level of either of a patent assignor or patent licensee is not barred from challenging the 891 Patent's validity under the doctrines of assignor or licensee estoppel.

■ The Settlement Agreement and subsequent actions by Dillard, moreover, do not estop Dillard from challenging the 891 Patent's validity. Dillard asserts that it paid Randolph–Rand the sums it demanded to settle its infringement actions because the cost of settlement was less than the amount it would have cost Dillard even to begin an investigation of the 891 Patent's validity. Dillard has never acknowledged the validity of the 891 Patent, nor has it, in settling any of Randolph–Rand's previous actions, consented to refrain from challenging the patent's validity. Indeed it is not clear that the New York state courts in which Randolph–Rand brought its previous suits against Dillard had jurisdiction to determine the patent's validity. *See* 28 U.S.C. § 1338 (United States district courts are vested with exclusive original jurisdiction to determine actions "arising under" the patent laws.)

SO ORDERED.