**AGENCY RENT A CAR SYSTEM, INC.; Avis, Inc.; and Avis Rent A Car System, Inc., Plaintiffs–Appellants/Cross–Appellees,**

v.

**GRAND RENT A CAR CORP.; Baker Car and Truck Rental, Inc.; Motorent, Inc.; General Car & Truck Leasing System, Inc.; Shore Rentals, Inc.; Hayes Leasing Company, Inc.; Car and Truck Rentals, Inc.; Checker Leasing, Inc.; and Rent–A–Car Co., Inc., Defendants–Appellees/Cross–Appellants,**

**Kal-Co Rental & Leasing, Inc.; Ness Rent A Car, Inc.; Auto Rent, Inc.; Coastal Bend Rent A Car, Inc., individually and on behalf of all others similarly situated, Defendants–Appellees.**

**Nos. 2021, 2223, Dockets 96–7204, 96–7332.**

United States Court of Appeals, Second Circuit.

Argued July 15, 1996.

Decided Oct. 18, 1996.

Malcolm I. Lewin, Morrison Cohen Singer & Weinstein, New York City (Sarah C. Lichtenstein, of counsel; Linda Silberman, New York City, of counsel; Andrew Schepard, Hempstead, New York, of counsel), for Plaintiffs–Appellants.

Job Taylor III, Latham & Watkins, New York City, for Defendant–Appellee/Cross–Appellant Grand Rent A Car.

David M. Zensky, Akin, Gump, Strauss, Hauer & Feld, New York City (Steven M. Pesner, of counsel), for Defendants–Appellees/Cross–Appellants other than Grand Rent A Car and Defendants–Appellees.

Before: WINTER and CABRANES, Circuit Judges, and MOTLEY, District Judge.*

WINTER, Circuit Judge:

Avis, Inc., Avis Rent A Car System, Inc. (collectively "AVIS"), and Agency Rent A Car ("Agency") filed this declaratory judgment action against various out-of-state licensees seeking an interpretation of the underlying licensing agreements. Judge Hurley held that the licensees are not subject to personal jurisdiction under Section 302(a)(1) of New York's long-arm statute. N.Y.Civ. Prac.L. & R. § 302(a)(1). We reverse.

## BACKGROUND

### A. *Jurisdictional Facts*

■ The following facts are either undisputed or are alleged in plaintiffs' complaint and affidavits. We accept them as true for the purposes of resolving this jurisdictional

---

* The Honorable Constance Baker Motley, United States District Judge for the Southern District of

New York, sitting by designation.

dispute. *See Hoffritz For Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 56–57 (2d Cir. 1985).

Avis, Inc., Avis Rent A Car System, and Agency Rent A Car are Delaware corporations with their principal places of business in Garden City, New York. Avis Rent A Car System, Inc., a wholly owned subsidiary of Avis, Inc., licenses businesses to use the Avis name in various locations in renting virtually new vehicles to business and leisure customers based on time and mileage use. Agency Rent-A-Car, a separate subsidiary of Avis, Inc., recently purchased certain assets constituting the "Agency Business." Agency rents in various locales older vehicles to insurance companies, auto-body repair shops, automobile dealers, and individual customers for use when vehicle owners need cars temporarily because their own have been stolen or are under repair. The name "Avis" is not used in Agency's business.

Defendants-appellees are various AVIS licensees with principal places of business (and incorporation) in California, Texas, New Jersey, Virginia, Alabama, Tennessee, Iowa, Michigan, North Dakota, and Arkansas. Each is a party to an exclusive licensing agreement with AVIS. Eleven of the licensees involved in this action initially entered into licensing agreements with AVIS prior to 1963 when AVIS was headquartered in Boston, Massachusetts. As a result, some of the licensing agreements call for the application of Massachusetts law. However, in 1963 AVIS moved its headquarters from Massachusetts to New York. Since that time, ten of the thirteen licensees in this action have acquired additional AVIS licenses, pursuant to licensing agreements negotiated with AVIS, that contain New York choice-of-law clauses.

Except for differences in choice-of-law provisions, the agreements are identical in pertinent detail. They grant to the licensee an "exclusive" license to use the AVIS "system" and name to rent vehicles in a defined territory. Licensees promise, *inter alia,* to: (i) provide AVIS written monthly reports of the total time and mileage charges assessed and the number of vehicles rented and available for rental by the licensee; (ii) pay ad-ministrative fees and advertising fees to AVIS; (iii) provide customers with uniform liability, fire, theft, and collision insurance; (iv) use standardized AVIS Rental Agreement contracts; (v) comply with the AVIS System Operator's Manual and other directives from AVIS; (vi) permit AVIS to inspect licensees' premises, vehicles, and records without notice; and (vii) subscribe to a national advertising campaign conducted by the "Advertising & Policy Committee," composed of members elected by the licensees and those appointed by AVIS. The licensing agreements also state that AVIS will provide assistance in advertising and in the procurement of large scale accounts and avail the licensee of optional participation in the manufacturers' vehicle fleet programs.

Under separate agreements, licensees have access to and utilize AVIS's computerized central reservation system known as the "Wizard System." According to the complaint, the Wizard System is located in and operated out of AVIS headquarters in Garden City.

In addition, four organizations that service the needs of the licensees are located in Mineola, New York. The first of these, the AVIS Licensee Association, is comprised of officers elected by licensees and represents the interests of the licensees to AVIS. The second, the Advertising & Policy Committee, conducts AVIS's joint advertising campaigns. It is comprised of six members appointed by AVIS and seven rotating members elected by licensees. The third, the AVIS System Advertising Trust, manages advertising funds that are paid by the licensees. The fourth, Vehicle Services of America, Ltd. ("VSA") (of which some of the licensees are shareholders) finances the purchase and lease of AVIS rental cars.

B. *The Instant Litigation*

Sometime in July 1995, AVIS informed its licensees of its intention to enter the replacement car rental market by acquiring the "Agency Business." Believing that AVIS's acquisition of Agency businesses within the licensees' districts would violate the licensees' contractual rights to exclusive territories, some licensees threatened litigation. In

response, AVIS and Agency filed the present action, seeking a declaration that Agency is a stand-alone business that serves a separate market and that AVIS's acquisition of the Agency Business does not violate the licensees' rights under the agreements. AVIS also sought an injunction enjoining licensees and all others similarly situated from commencing litigation in other courts concerning this matter.

Licensees moved to dismiss pursuant to Rule 12(b)(2), Fed.R.Civ.P., for lack of personal jurisdiction. In granting the motion to dismiss, the district court held, *inter alia,* that although the licensees "transact business" in New York, the instant claim does not "arise out of" those transactions and thus long-arm jurisdiction under N.Y.Civ.Prac.L. & R. § 302(a)(1) does not exist.[1]

## DISCUSSION

On appeal, AVIS and Agency contend that because their claim arises out of the licensing agreements that govern the relationship between the parties, it necessarily arises out of transactions by the licensees in New York. In addition to disputing that contention, the licensees argue that the posture of this case as a defensive declaratory judgment action makes it inappropriate for the exercise of long-arm jurisdiction. Finally, the licensees argue that, even if the exercise of personal jurisdiction over the out-of-state defendants is proper, the court should exercise its discretion and refuse to entertain this declaratory judgment action.[2]

■ A court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over the defendants. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Section 302(a)(1) of the New York long-arm statute provides that a court may exercise personal jurisdiction over any foreign defendant who "transacts any business within the state." N.Y.Civ.Prac.L. & R. § 302(a)(1). For a court to exercise jurisdiction under this provision, the claim must "arise from" the transaction of business within the state. *Hoffritz,* 763 F.2d at 58–59.

### A. "Transacts Business"

■ The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has an on-going contractual relationship with a New York corporation, *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 653, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977); (ii) whether the contract was negotiated or executed in New York, *George Reiner,* 41 N.Y.2d at 653, 394 N.Y.S.2d 844, 363 N.E.2d 551; *Hoffritz,* 763 F.2d at 60, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, *CutCo,* 806 F.2d at 367–68; *Hoffritz,* 763 F.2d at 60; (iii) what the choice-of-law clause is in any such contract, *CutCo,* 806 F.2d at 366–67; *Sacody Technologies, Inc. v. Avant, Inc.,* 862 F.Supp. 1152, 1156 (S.D.N.Y.1994) (choice-of-law clause is a significant, but not dispositive, factor); and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state, *CutCo,* 806 F.2d at 368. Although all are relevant, no one factor is dispositive. Other factors may also be considered, and the ultimate determination is based on the totality of the circumstances. *See PaineWebber Inc. v. Westgate Group, Inc.,* 748 F.Supp. 115, 118 (S.D.N.Y.1990).

---

1. Subsequently, one licensee filed suit in California state court, the other twelve filed suit in Texas state court, and AVIS and Agency commenced two new federal actions, one in the Central District of California and the other in the Northern District of Texas. The California action has since been dismissed. *See Grand Rent A Car Corp. v. Avis, Inc., et al,* 96–Civ–1720–RSWL (C.D. Cal. June 5, 1996).

2. Defendants-appellees Kal–Co Rental & Leasing, Coastal Bend Rent A Car, Ness Rent A Car, and Auto Rent also challenge the existence of subject matter jurisdiction on the ground that AVIS operates no Agency Rent A Car businesses within any of their territories and thus no actual controversy exists between these defendants and AVIS. We decline to address this issue, leaving it for consideration in further proceedings in the district court.

Applying those factors, we do not hesitate to conclude that the AVIS licensees transact business in New York. Their very businesses arise out of an ongoing contractual relationship with AVIS, which is headquartered in New York. Pursuant to these contractual arrangements, licensees submit monthly reports and fees to the New York headquarters and are in contact with individuals at AVIS headquarters on an almost daily basis. *See CutCo,* 806 F.2d at 368. Moreover, licensees have voluntarily located their professional association and fleet financing organization in New York and conduct joint advertising campaigns with the AVIS Advertising & Policy Committee and Advertising Trust in New York. In addition, it appears that most, if not all, licensees heavily rely upon AVIS's New York-based computer system for reservations. *Cf. CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262–63 (6th Cir.1996) (electronic contacts with forum state via computer network constitute "transacting business" under Ohio long-arm statute where non-resident subscriber of computer network service located in Ohio had on-going contract with service to sell product on-line).

■ The licensees contend that, to the extent that some of the licensing agreements were entered into when AVIS was headquartered in Massachusetts, the fact that licensees now must deal with AVIS in New York is fortuitous and is not the kind of purposeful contact contemplated by Section 302(a)(1). They argue that, absent an intent to contract with a New York company, the transmission of payments and reports to New York and the performance of services by AVIS from New York on behalf of licensees lack jurisdictional relevance. We disagree.

In contrast to the decisions relied upon by licensees, the instant matter does not involve temporary, random, or tenuous relationships with the forum. *Compare Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762–63 (2d Cir.1983) (disparate and unconnected shipments of goods into New York and mailing of a single cease and desist letter to plaintiff in New York insufficient to constitute "transacting business"); *International Customs Assocs., Inc. v. Ford Motor Co.,* 893 F.Supp.

1251, 1260–61 (S.D.N.Y.1995) (New York choice-of-law clause insufficient to confer long-arm jurisdiction where only contacts were correspondence and telephone calls to New York by Taiwanese business and where a substantial portion of contract was to be performed in Taiwan); *PaineWebber,* 748 F.Supp. at 119–120 (where PaineWebber closed its Dallas branch office, thereby forcing Texas client to deal with its New York office for purposes of *a single transaction,* Texas client did not purposefully avail itself of the New York forum).

Indeed, even the licensees that contracted with AVIS prior to the move to New York have done constant business with AVIS in New York for over three decades, including the continuous transmission of payments and reports to New York. All but three have entered into new contracts with AVIS that contain New York choice-of-law clauses. The licensees' contacts with New York have been, therefore, anything but temporary, random, or tenuous. Rather, they have been continual, repetitive, and essential to the licensees' businesses.

■ The licensees also argue that jurisdiction in New York is improper because they did not negotiate or execute the contracts there and have rarely, if at all, made trips to New York to meet with AVIS regarding the performance of the contracts. *But see CutCo,* 806 F.2d at 367 (defendants' two relevant business visits to the forum "not jurisdictionally insignificant"); *Hoffritz For Cutlery,* 763 F.2d at 57, 60 (negotiations for on-going contractual relationship with New York company took place in New York and defendants subsequently visited New York more than fifty times to discuss business under the agreement). We find this argument unpersuasive. The licensees have a professional organization in New York to act as their agent in representing their collective interests with AVIS, a fact that wholly undercuts the lack of frequent personal trips to New York. Indeed, we question whether, in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence. *See CompuServe,* 89 F.3d at 1262, 1264. The small number of personal trips by the licensees to

New York does not, therefore, cause us to shrink from the conclusion that they purposefully availed themselves of the forum.

Having considered the totality of the circumstances—the daily contacts with AVIS in New York, the monthly payments and reports sent there, the business conducted with VSA, the money sent to the advertising trust, the rotating memberships on the Advertising & Policy Committee, AVIS's oversight of licensees, and the booking of reservations in New York—we conclude that licensees "transact business" in New York within the meaning of Section 302(a)(1).

B. *"Arising out of" Business Transacted in New York*

■ We turn next to the question of whether the claim here arises from the licensees' business transactions in the forum. A claim "arises out of" a defendant's transaction of business in New York "when there exists 'a substantial nexus' between the business transacted and the cause of action sued upon." *Sacody Technologies,* 862 F.Supp. at 1155 (citing *Hoffritz,* 763 F.2d at 60). Appellants argue that the claim here is inherently bound up with the licensees' business transactions in New York because all business in New York is conducted pursuant to the allegedly breached licensing agreements. The district court rejected this argument, holding instead that the sole cause of the dispute was AVIS's acquisition and operation of the Agency businesses within the licensee areas outside of New York. We disagree with the district court.

■ Two elements give rise to a breach of contract claim: (i) a contract between the parties and (ii) an act allegedly in violation of that agreement. Both are necessary elements of the claim; neither is sufficient by itself. Thus, the licensees' breach of contract claim "arises out of" *both* AVIS's acquisition of the Agency Business *and* the licensing agreement itself. Contrary to the district court's assertion that "the existence of the contract is one step removed from the basis of the present dispute," the existence of the contract is at its heart.

In *Hoffritz* we rejected the notion that a claim based on an alleged breach of contract that occurs outside of New York cannot be said to "arise out of" transactions in the forum. In that case, the plaintiff, a New York corporation, alleged that a Georgia franchisee had breached the franchise agreement, which had been partially negotiated in New York. We held that even though the complaint alleged a breach based on conduct in Georgia, the action "ar[ose] directly from alleged breaches of the *franchise agreement*" and thus from business transacted in New York. 763 F.2d at 59. Because the present declaratory judgment action seeks an interpretation of the licensing agreements pursuant to which all of the licensees' ongoing New York business is conducted, this claim arises out of defendants' transactions with the forum. *See id.,* at 59; *see also George Reiner,* 41 N.Y.2d at 653, 394 N.Y.S.2d 844, 363 N.E.2d 551 (contract establishing a continuing relationship between the parties is a transaction giving rise to a breach of contract action). *But see Martin E. Segal Co. v. Barton,* 612 F.Supp. 935 (S.D.N.Y.1985) (plaintiff-employer's claim that defendant violated non-compete agreement did not arise out of defendant's visits to New York).

■ The posture of this case as a defensive declaratory judgment action does not alter our analysis. It is true that in *Beacon Enterprises* we expressed doubt whether long-arm jurisdiction should be asserted in defensive declaratory judgment actions where plaintiffs are seeking only a determination of "no liability." 715 F.2d at 764–65 (defensive declaratory judgment actions are not the types of cases that the New York courts have regularly linked to Section 302(a)(1)); *see also Columbia Pictures Indus., Inc. v. Schneider,* 435 F.Supp. 742, 749–50 (S.D.N.Y.1977) (New York's long-arm statute should not be interpreted to cover defensive declaratory judgment actions), *aff'd,* 573 F.2d 1288 (2d Cir.1978). However, the expression of those doubts were dicta, and several district courts in this circuit have since exercised jurisdiction over foreign defendants in declaratory judgment actions. *See, e.g., Moyers v. Brown,* No. 89–Civ–4935–CSH, 1990 WL 3183, *5 (S.D.N.Y.1990) (dis-

tinguishing *Beacon Enterprises* on the facts and holding that, where a sufficient New York nexus is present, long-arm jurisdiction is not foreclosed simply because the action is one for declaratory relief); *Dillard Dep't Stores, Inc. v. Application Art Lab. Co.*, 787 F.Supp. 49 (S.D.N.Y.1992) (finding long-arm jurisdiction in a declaratory judgment action); *see also American Greetings Corp. v. Cohn*, 839 F.2d 1164 (6th Cir.1988) (applying Ohio's long-arm statute, which provides for jurisdiction where the cause of action arises out of person's transaction of business in the state, to defensive declaratory judgment actions). In our view, therefore, the fact that the plaintiffs seek a declaration of no liability does not alter our conclusion. The critical fact is that the claim arises out of licensing agreements under which the licensees' New York business transactions are conducted.

## C. *Constitutional Considerations*

■ In order to satisfy the Due Process Clause of the United States Constitution, the exercise of long-arm jurisdiction by New York must be based on defendants' "minimum contacts" with the state and must comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). These limitations pose no barrier to the assertion of personal jurisdiction in the instant matter. The licensees' extensive involvement with AVIS in New York can in no sense be viewed as "random," "fortuitous," or "attenuated." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480, 105 S.Ct. 2174, 2186, 85 L.Ed.2d 528 (1985) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). As in *Burger King*, licensees have "deliberately reach[ed] out" beyond their home states for the purpose of "a long-term franchise and the manifold benefits that would derive from affiliation with a nation-wide organization." *Id.* at 479–80, 105 S.Ct. at 2186. As such, they purposefully availed themselves of the forum and should have reasonably foreseen being haled into court here. *See id.* at 474, 105 S.Ct. at 2183 (citing *World–Wide Volkswagen Corp. v. Woodson*,

444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

Such a result is entirely reasonable. Indeed, no other forum would be more convenient for the collective licensees. They are from ten different states, and New York is the *only* state with which all licensees regularly interact. Therefore, the exercise of personal jurisdiction by a New York court over the licensees in no way offends traditional notions of fair play and substantial justice. *See Burger King Corp.*, 471 U.S. at 477–78, 105 S.Ct. at 2184–85 (where franchiser and franchisees carried on a continuous course of business and the Miami headquarters made the key negotiating decisions out of which the litigation arose, forcing franchisee to defend in Florida did not violate constitutional notions of "fair play" and "substantial justice").

## D. *Discretion to Hear Declaratory Judgment Action*

■ The Licensees' final argument on appeal is that this is not a proper case for declaratory relief. The exercise of jurisdiction over a declaratory judgment action is discretionary, and we review a district court's decision to entertain or dismiss such an action only for an abuse of discretion. *Wilton v. Seven Falls Co.*, —— U.S. ——, ——, 115 S.Ct. 2137, 2144, 132 L.Ed.2d 214 (1995). Because the district court here has not had an opportunity to address this issue, we decline to consider it. However, we note that to the extent that the factors to be considered in making such a determination parallel those discussed here, the district court should weigh such factors in a manner consistent with this opinion.

We therefore reverse. Our disposition of this matter renders it unnecessary for us to address the cross-appeal.