**PHOTOACTIVE PRODUCTIONS, INC.,
doing business as Creative Placement
Group, Plaintiff,**

v.

**AL–OR INTERNATIONAL
LTD., Defendant.**

No. 99 CV 8417(ADS).

United States District Court,
E.D. New York.

June 14, 2000.

Ackerman, Levine, Cullen & Brickman, LLP, Great Neck, NY, for plaintiff, by Andrew J. Luskin, John M. Brickman, of counsel.

Kent, Beatty & Gordon, LLP, New York City, for the defendant, by Michael B. Kent, of counsel.

Zimmerman, Rosenfeld, Gersh & Leeds, LLP, Beverly Hills, CA, for defendant, by Jeffrey F. Gersh, of counsel.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On November 23, 1999, Photoactive Productions, Inc., doing business as Creative Placement Group ("CPG" or the "plaintiff") filed a complaint in New York Supreme Court, Suffolk County (Index No. 99–26689) alleging that AL–OR International LTD ("AL–OR" or the "defendant") failed to pay it money due and owing as a result of services in connection with the designing of magazine advertisements. On December 22, 1999, AL–OR removed this case to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1441. Presently before the Court is AL–OR's motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Alternatively, AL–OR moves pursuant to

28 U.S.C. § 1404(a) to transfer this matter to the United States District Court for the Central District of California.

## I. BACKGROUND

Unless otherwise stated, the facts set forth below are taken from the plaintiff's complaint. As this decision involves a motion to dismiss for lack of personal jurisdiction and a motion to transfer, the Court will also consider the various affidavits submitted by the parties. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 196–98 (2d Cir.) (discussing procedure for challenging personal jurisdiction), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *see also Factors Etc., Inc. v. Pro Arts Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) (holding that motion to transfer venue must be supported by affidavit). As such, the facts set forth below are also taken from the sworn affidavits and declarations of Jack Zemer, Doron Basha, Marianne Terchunian, Craig Mowry, and Ori Zemer.

CPG is a corporation duly organized and existing under the laws of the State of New York with its principal place of business in East Quogue, New York. AL–OR is a corporation organized and existing under the laws of the State of California with its principal place of business in La Jolla, San Diego County, California. CPG alleges that AL–OR failed to pay for advertising and related services that it rendered. CPG is in the business of providing advertising, media planning and placement, and related services (collectively "CPG Services"). Between the period of April 1999 to December 1999, CPG provided Services to AL–OR. The plaintiff contends that it is owed the sum of $896,294.50 from AL–OR for CPG Services that remain unpaid.

AL–OR markets, manufacturers, and distributes for sale a line of fine jewelry, watches, belts, handbags, and other accessories marketed under the brand name *Charriol* ("Charriol Products"). CPG contends that a substantial portion of the money owed to it by AL–OR represents out-of-pocket costs that CPG incurred to coordinate, plan, and run print advertisements in nationally circulated magazines for AL–OR.

In January 1999, discussions between AL–OR and CPG took place regarding the possibility of AL–OR using CPG as its advertising broker for the 1999 calendar year. All communications were done by either telephone, fax, mail or email. In April 1999, CPG began providing services for AL–OR. In October 1999 a dispute arose over the quality of CPG services and the billing methodology of CPG.

AL–OR submits that it has no offices, warehouses, employees or residences within New York. AL–OR further claims that it does not maintain any officers, agents, or business representatives in New York; it does not own any real or personal property in New York; and it does not maintain any telephone numbers or directory listings in New York. According to AL–OR, it's sales of Charriol Products to retailers in New York are solicited primarily by way of telephone contact by AL–OR's in house employees, from its headquarters in La Jolla, California. Sales of Charriol Products by AL–OR to retailers within New York represents approximately three to five percent of AL–OR's total sales.

AL–OR contends that New York is an inconvenient forum because all the evidence, documents, witnesses, principals, and officers are located in California. Furthermore, AL–OR asserts that none of its employees or representatives have ever traveled to New York to negotiate, discuss or enter into a contract with CPG. Therefore, AL–OR argues that it does not have sufficient minimum contacts with New York to justify a finding of jurisdiction in the Eastern District of New York.

On the one hand, CPG alleges that AL–OR does have purposeful and substantial contacts with New York to support the exercise of personal jurisdiction. CPG alleges that AL–OR requested that CPG

hire an employee who would coordinate all local cooperative Charriol advertising throughout the Country. As a result, CPG hired one David Nye. Nye was based in New York and worked directly with AL–OR's customers to promote and facilitate all cooperative Charriol advertising. While CPG supervised Nye, he acted as a liaison to AL–OR. According to CPG, in 1999, a budget of $332,000 was established for the Charriol advertising program, which Nye managed from New York on behalf of AL–OR. As further evidence of AL–OR's contact with New York, CPG submits that it established a New York cellular number dedicated to Charriol, which Nye answered, "Charriol, David Nye speaking."

CPG also contends that AL–OR's employees have visited New York for business purposes. For example, in September 1999, Ori Zemer, AL–OR's marketing director, traveled to Manhattan to meet with Craig Mowry, chairman of CPG, and a representative of the Italian edition of Vogue to discuss the publisher's production of a photographic layout showing Charriol products. In addition, CPG claims that Doron Basha, AL–OR's Vice President for Sales and Marketing, traveled to New York in July 1999 to assist CPG in selecting an outdoor site to shoot a commercial. According to CPG, on the same trip, Basha also met with other CPG officers to discuss strategies for achieving AL–OR's marketing objectives. Further, CPG claims that representatives of AL–OR also attend and maintain a vendor booth at the annual "JA" jewelry show held in the winter and summer each year at the Jacob Javits Convention Center in New York. Finally, CPG submits that in June 1999, Jack Zemer, AL–OR's principal, and Doron Basha attended a consumer show at the Jewelry Information Center in New York City.

## II. DISCUSSION

### A. *Standards of Review*

With regard to a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999); *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999) (citing *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.), *cert. denied,* 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996)). While the plaintiff will ultimately have to prove the existence of personal jurisdiction over the defendant by a preponderance of evidence, prior to discovery, a plaintiff may defeat such a motion with legally sufficient allegations of jurisdiction that are pleaded in good faith. *See Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184 (2d Cir.1998); *see also Wilcock v. Equidev Capital L.L.C,* 1999 WL 1129068, 1999 U.S.Dist. LEXIS 18898, *2 (S.D.N.Y. Dec. 9, 1999).

Motions to dismiss under 12(b)(2) test the plaintiff's theory of jurisdiction and test the facts supporting the jurisdictional theory. *See Credit Lyonnais Sec. (U.S.A.), Inc. v. Alcantara,* 183 F.3d 151, 153 (2d Cir.1999). To survive such a motion to dismiss, the plaintiff is required to make a prima facie showing of jurisdiction, including an averment of facts that, if credited by the ultimate trier of fact, sufficiently establish jurisdiction over the defendant. *See Kernan,* 175 F.3d at 240; *Bank Brussels Lambert,* 171 F.3d at 784.

In reaching a decision as to whether jurisdiction is appropriate, the Court need only determine whether the facts alleged by the plaintiff, if true, are sufficient to establish jurisdiction. *See Credit Lyonnais Sec., Inc.,* 183 F.3d at 153. No evidentiary hearing or factual determination is necessary for this purpose. *See id.* When considering various affidavits and sworn declarations, the Court must construe them in the "light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a contro-

verting presentation by the moving party." *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993).

■ Personal jurisdiction over a non-resident defendant in a federal diversity action is determined by the law of the forum state. *See id.; Jazini,* 148 F.3d at 183–84; *Kronisch v. United States,* 150 F.3d 112 (2d Cir.1998). Thus, in resolving questions of personal jurisdiction in a diversity action,

> a district court must conduct a two-part inquiry.... "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process."

*Kernan,* 175 F.3d at 240 (quoting *Metropolitan Life Ins.,* 84 F.3d at 567) (other citation omitted).

■ Before analyzing the merits of the defendant's motion to dismiss for lack of personal jurisdiction and the defendant's motion to transfer venue, the Court notes that the defendant's argument that a forum selection clause contained in the agreement between the parties choosing California as the proper forum is without merit. The defendant states in its memorandum of law that the "contract was executed by AL–OR in La Jolla, California, and returned to CPG. As executed, the contract provided that any disputes between AL–OR and CPG arising under the contract would be resolved in a forum in Los Angeles, California, and that such resolution would be made according to and under the laws of the State of California."

However, upon reviewing the "forum selection clause," it is clear that it is in fact an arbitration clause. The agreement states that "any dispute between CHARRIOL and CREATIVE PLACEMENT GROUP that arises out of this Agreement will be resolved through a binding arbitration proceeding to be conducted under the auspices and the commercial arbitration rules of the American Arbitration Association." As neither party has apparently invoked its right to arbitrate, the Court concludes that this clause is not relevant in regard to the determination of whether jurisdiction in the Eastern district of New York is appropriate or whether this case should be transferred to California.

### B. *AL–OR's Motion to Dismiss for Lack of Jurisdiction*

■ A court has personal jurisdiction over a non-domiciliary defendant in a civil action if it can exercise either general or specific jurisdiction over his person. A court has general jurisdiction over a non-domiciliary defendant where the defendant maintains "continuous and systematic" contacts with the forum state. *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981). A court has specific jurisdiction over a defendant when his conduct falls within one of the categories set forth in the forum state's long-arm statute. In New York, personal jurisdiction is determined by sections 301 and 302(a) of the New York Civil Practice Laws and Rules ("CPLR"). *See Reynolds Corp. v. National Operator Services, Inc.,* 73 F.Supp.2d 299, 302–03 (W.D.N.Y.1999). CPG contends that personal jurisdiction is conferred upon AL–OR pursuant to CPLR § 301 ("Section 301") and New York's long arm statute, CPLR § 302(a)(1) ("Section 302(a)(1)").

#### 1. General Jurisdiction—Section 301

Section 301 confers jurisdiction over a non-domiciliary defendant "on causes of action wholly unrelated to acts done in New York," when the defendant is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in the jurisdiction." *Ball,* 902 F.2d at 198.

■ Section 301 permits the exercise of general jurisdiction over a non-domiciliary who is present within the state. A corporation is "doing business" and is therefore

"present" in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Ugalde v. Dyncorp., Inc.*, 2000 WL 217502, 2000 U.S.Dist. LEXIS 1745, *4 (S.D.N.Y. February 23, 2000) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985)) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)).

■ Courts examine a number of factors when determining whether a corporation is "doing business" in New York and thus subject to personal jurisdiction. These factors include: 1) whether the corporation has an office in New York; 2) whether the corporation has solicited business in New York; 3) whether the corporation has bank accounts or property in New York; and 4) whether the corporation has employees in New York. *See Hoffritz*, 763 F.2d at 58.

■ While "[a] defendant's solicitation of business alone cannot justify a finding of presence in New York pursuant to section 301," *Anderson v. Indiana Black Expo, Inc.*, 81 F.Supp.2d 494, 500 (S.D.N.Y.2000) (citing *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982)), the Court is persuaded that AL–OR was engaged in a continuous and systematic course of doing business in New York so as to warrant a finding of its presence in New York for jurisdiction purposes. Viewing the facts in the light most favorable to the plaintiff, as the Court must in the context of a motion to dismiss, *see A.I. Trade Finance*, 989 F.2d at 76, the Court concludes that jurisdiction in New York is proper under section 301.

In reaching this conclusion, the Court notes that the plaintiff has made a prima facie showing of jurisdiction by alleging that AL–OR solicits business in New York; advertises in New York; conducts a large number of sales in New York; and receives considerable revenue from sales in New York. Specifically, CPG has presented credible evidence that AL–OR selected CPG as its advertising agent and selected New York as the center of its advertising activity. In addition, the advertising schedule between AL–OR and CPG contemplated expenditures of more that $650,000 for 1999. Furthermore, CPG represents that AL–OR has New York accounts with 33 retail locations including Bloomingdales, Saks Fifth Avenue, Neiman–Marcus, and Tourneau. Moreover, it appears that David Nye, who was employed in New York, held himself out as an employee of AL–OR in order to facilitate all cooperative Charriol advertising.

In fact, not only did Nye identify himself as a Charriol Account Representative, his letterhead contained the California address of AL–OR. Finally, CPG claims that various principal employees of AL–OR traveled to New York to meet with CPG employees to discuss marketing strategies and to participate in jewelry industry trade shows and consumer shows. These factors sufficiently set forth personal jurisdiction. Accordingly, the Court finds that it has general jurisdiction over the defendant pursuant to CPLR 301 as the defendant is doing business in New York.

### 2. Specific Jurisdiction—Section 302(a)(1)

Even if the Court were to find that this Court lacks general jurisdiction over the defendant pursuant to CPLR 301, the Court would still have specific jurisdiction over the defendant pursuant to CPLR 302(a)(1), which provides in pertinent part, as follows:

Section 302(a)(1) provides as follows:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise jurisdiction over any non-domiciliary, or his executor

or administrator, who in person or through an agent:

\*　　\*　　\*　　\*　　\*　　\*

1. Transacts any business within the state or contracts anywhere to supply goods or services in the state.

This statute permits a court to exercise jurisdiction over a non-domiciliary defendant if: 1) the defendant "transacts business" in New York; and 2) the cause of action arises out of that business activity, such that an "articulable nexus" exists between them. *Credit Lyonnais Securities, Inc.*, 183 F.3d at 153 (holding that where a defendant held an "active account" with plaintiff's firm in New York, personal jurisdiction under § 302(a)(1) may be established). A defendant transacts business in New York when he "purposefully avails" himself of the privilege of conducting business there, thus invoking the benefits and protections of New York law. *See id.* at 153–54.

a. *Did AL–OR Transact Business in New York?*

■■■ To determine whether a defendant "transacts business" in the State of New York for the purposes of CPLR 302(a)(1), a variety of factors are considered including:

(1) Whether the contract was negotiated and executed in New York;

(2) Whether the contract contains a New York choice-of-law clause;

(3) Whether the contract is to be performed in New York;

(4) Whether, after executing the contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; and

(5) The defendant's physical presence in New York, if any, in connection with an ongoing contractual relationship with a New York corporation.

*Unlimited Care, Inc. v. Visiting Nurse Ass'n of Eastern Massachusetts, Inc.*, 42 F.Supp.2d 327, 330–31 (S.D.N.Y.1999); *See also Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996). All five factors are relevant, and none in and of itself is dispositive. As such, when deciding whether specific jurisdiction exists, the Court looks to the totality of the circumstances. *See Agency Rent A Car*, 98 F.3d at 29.

■■■ Considering these five factors, the Court concludes that the totality of the circumstances warrant a finding that specific jurisdiction over the defendant AL–OR exists in New York. The Court finds that: (1) the contract was executed in New York; (2) no choice-of-law clause existed; (3) the contract was to be performed primarily in New York; (4) after executing the contract, representatives of AL–OR visited New York to discuss such items pertaining to the contract such as a photo layout, and a sight to make a commercial; and (5) AL–OR was physically present in New York.

Having considered the totality of the circumstances—the daily contacts through mail, email, telephone, and fax; the business visits to New York; the fact that CPG was acting as AL–OR's advertising agent and was performing its part of the contract in New York; and David Nye's position in New York to promote Charriol advertising, the Court concludes that AL–OR was "transacting business" in New York within the meaning of Section 302(a)(1).

b. *Did the Cause of Action Arise out of AL–OR's Business Transactions in New York?*

■■■ A claim arises out of a defendant's transaction of business in New York where there exists a "substantial nexus between the business transacted and the cause of action sued upon." *Agency Rent A Car*, 98 F.3d at 31 (citing *Hoffritz*, 763 F.2d at 60). There are two elements that give rise to a breach of contract claim: (i) a contract between the parties and (ii) an act allegedly in violation of that agreement. *See id.* Both are necessary ele-

ments of the claim and neither is sufficient by itself. *Id.* The contract in this matter specified that CPG would provide CPG Services at an agreed price. It is alleged by CPG that while it provided these services, AL–OR failed to make the appropriate payments. It is clear that CPG's claim for payment has a direct relationship to the business transacted by AL–OR in New York. Therefore, the Court finds that CPG has established that specific jurisdiction is proper pursuant to section 302(a)(1).

### 3. Due Process Considerations

Finally, exercise of personal jurisdiction over AL–OR must comport with "traditional notions of fair play and substantial justice" as expressed in the due process clause of the Fourteenth Amendment. *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (citing *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). "By requiring 'fair warning' that an individual's activities in a state may subject him to suit there, the Due Process Clause protects that person's liberty interest and 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Metropolitan Life Ins.,* 84 F.3d at 567 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)).

The due process requirement has two components: the "minimum contacts" inquiry and the "reasonableness" inquiry. Minimum contacts with the forum state ensure that a "defendant has sufficient contacts with the forum state to justify the court's exercise of jurisdiction." *Id.* The "reasonableness" inquiry requires that a court evaluate the following factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 113–14, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

The Court finds that the exercise of jurisdiction in the Eastern District of New York comports with the due process requirement. Indeed, "[t]he defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Dixon v. Mack,* 507 F.Supp. 345, 352 (S.D.N.Y.1980). As such, although AL–OR is a California corporation, the Court finds that CPG has adequately alleged that AL–OR maintains sufficient minimum contacts with New York. AL–OR contracted with a New York company to become its advertising agent; AL–OR's products are sold in approximately 33 retail locations throughout New York; AL–OR derives profits from their products being sold in New York; David Nye worked as the Charriol account representative from New York; and AL–OR's principals take part in jewelry industry and trade shows in New York.

While AL–OR has alleged that all of its principals, officers, employees, witnesses, documents and evidence are located in California, the Court finds that it is "reasonable" to maintain this litigation in New York, as New York has an undeniable interest in providing redress to its own citizens, and because the alleged injuries to CPG occurred in New York. In addition, it should be noted that any burden on AL–OR in defending a law suit in New York is alleviated by "the conveniences of modern communication and transportation [that] would have been a serious burden only a few decades ago." *Metropolitan Life Ins.,* 84 F.3d at 574. In fact, AL–OR has already appeared in Court on this matter and is being ably represented by local and

California counsel. Hence, the Court concludes that this factor, alone, "falls short of overcoming the [plaintiffs'] threshold showing of minimum contacts." *Id.*

The Court also notes that AL–OR has not suggested, much less shown, any substantive social policies, or how the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, would be furthered by permitting this case to be heard in another forum.

### C. *AL–OR's Motion to Transfer this Matter to the Central District of California*

A motion to change venue from one federal district court to another, when venue is initially proper, is governed by 28 U.S.C. § 1404, which provides in pertinent part:

> (a) for the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ The goal of Section 1404(a) "is to prevent waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. The FBL–585,* 364 U.S. 19, 26–27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)); *see also Launer v. Buena Vista Winery, Inc.,* 916 F.Supp. 204 (E.D.N.Y.1996); *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983 (E.D.N.Y.1991).

■ The inquiry on a motion to transfer venue is two fold. First, the Court must determine whether the action sought to be transferred is one that "might have been brought" in the district court in which the movant seeks to have the case litigated, the so-called "transferee court." If so, the second issue for the court to resolve is whether the "convenience of the parties and witnesses" and the "interest of justice," warrant a transfer to the proposed district. The movant bears the burden of clearly establishing that a transfer is appropriate and that the motion should be granted. *See Factors Etc.,* 579 F.2d at 218–19.

As to the first query, it appears that the case might have been brought in the Central District of California because that is the venue where AL–OR has its offices. In addition, personal jurisdiction most likely exists over CPG in California because of the business it transacted with AL–OR; the business trips of the principals of CPG's to California in furtherance of its business purposes with AL–OR; and the revenue it received from AL–OR. Assuming *arguendo* that personal jurisdiction exists over CPG in the Central District of California, the Court must, therefore, concentrate on the second prong of the test; namely, whether a transfer is warranted in light of the convenience of the parties and witnesses, and if it would be in the interest of justice.

### 1. "For the Convenience of Parties and Witnesses" and "in the Interest of Justice"

■ Whether an action should be transferred under section 1404(a) is generally left to the sound discretion of the district court. *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir.1993); *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989) (citing cases). In order to assist in this determination, the courts have employed a variety of factors that serve as a guidepost, none of which are singly dispositive. Those factors include: (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and finally, (10) the

Court should also consider how best to serve the interest of justice, based on an assessment of the totality of material circumstances. *See, e.g., Barge v. Daily Journal Corp.,* 1996 WL 434561, *3 (S.D.N.Y. Aug.2, 1996); *Launer,* 916 F.Supp. at 213; *Miller v. County of Passaic,* 699 F.Supp. 409, 411 (E.D.N.Y.1988), (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507–08, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

Although these factors are essentially the same as those considered in determining whether an action should be dismissed for *forum non conveniens,* Section 1404(a) vests courts with power to exercise broader discretion to grant transfers upon a lesser showing of inconvenience than is required under the *forum non conveniens* analysis. *See Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

As stated above, a party seeking a transfer under Section 1404(a) bears the burden to make a "clear" showing that a transfer is appropriate, and must support the application with an affidavit containing detailed factual statements relevant to the factors set forth above, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony. *See Factors Etc.,* 579 F.2d at 218. AL–OR has failed to make this showing. AL–OR's motion to transfer is not supported by any sworn affidavit containing detailed factual statements relevant to the ten factors outline above, nor is there an affidavit that contains a list of potential principal witnesses expected to be called and a general statement of the substance of their testimony. While Doron Basha, AL–OR's Vice President for Sales and Marketing, mentions in his affidavit that *he* would be inconvenienced if he had to travel to New York, the Court notes that he is not a non-party witness and was integral in the negotiation of the contract between CPG and AL–OR. Thus, with reasonable certainty, he should have been aware of the possibility that a law suit could arise in the State of New York.

In addition, when considering a motion to transfer venue, as in the consideration of a *forum non conveniens* issue, the plaintiff's initial choice of forum is entitled to "great weight." *Miller,* 699 F.Supp. at 411. "Where the balance of convenience is in equipoise, plaintiff's choice of forum should not be disturbed." *Ayers v. Arabian American Oil Co.,* 571 F.Supp. 707, 709 (S.D.N.Y.1983).

Therefore, based upon the totality of the circumstances, namely, due to the absence of any affidavits by AL–OR relating to the ten factors summarized above; as well as the policy consideration of not disturbing a plaintiff's choice of forum and the heavy burden on the party seeking a transfer, AL–OR's motion to transfer venue to the Central District of California is denied.

### III. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED,** that the defendant AL–OR's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction, is **DENIED;** and it is further

**ORDERED,** that the defendant AL–OR's motion to transfer this matter to the Central District of California is **DENIED;** and it is further

**ORDERED,** that upon receipt of this Order, the parties are to contact United States Magistrate Judge Michael L. Orenstein forthwith and establish a timely discovery schedule.

**SO ORDERED.**