Edward R. BURT

v.

ISTHMUS DEVELOPMENT
COMPANY.

No. 15206.

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1955.

Rehearing Denied Feb. 3, 1955.

Ray W. Richards, Culton, Morgan, Britain & White, Amarillo, Tex., for appellant.

William Q. Boyce, H. A. Berry, Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, Tex., for appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellee is a corporation organized under the laws of and domiciled in the State of Texas. Appellant, a citizen of New York, brought this action for the recovery of money and equipment allegedly belonging to him and illegally retained by the appellee and for damages, in the total amount of $38,393. The original complaint alleged: that appellant was the owner of an oil and gas lease on certain lands in the Republic of Mexico and was desirous of obtaining experienced personnel to drill a test well thereon; that he and appellee's vice president, R. E. O'Donnell, conducted negotiations toward that end; that O'Donnell suggested appellee would furnish certain experienced personnel to do the work and that he (O'Donnell) would personally supervise the proposed operations; that appellant acquired a bulldozer and a welding unit and placed them in the custody of appellee at its camp in Mexico; that appellant subsequently mailed his checks to appellee in the sum of $27,500 to be used for the rental of a drilling rig and the purchase of certain supplies; that he expressly advised appellee not to use the money or equipment unless O'Donnell could personally supervise the operation; that appellee had not furnished experienced personnel, and O'Donnell had not personally supervised any activity and appellant had demanded the return of his money and equipment; that appellee had repeatedly refused to return either.

Appellee answered, alleging: that the parties had entered into a contract whereby appellee would furnish personnel for drilling operations and would conduct such operations in appellant's behalf; that if there were an agreement to have O'Donnell supervise such operations, which was denied, the agreement contemplated that his supervision would be carried on in connection with and subject to the performance of his other duties as vice president and general manager of appellee's business in Mexico; that appellee had done some work and incurred certain expenses in preparing for such operations and that appel-

lant repeatedly refused to pay these expenses or advance sufficient sums for the rental of drilling equipment. A copy of the alleged contract was attached to the answer, and appellee made a cross-claim in the amount of $17,500 for alleged expenses and damages for breach of contract.

Appellant filed a reply in which he admitted that the document attached to appellee's answer was a true copy, but asserted that it was only a proposed contract which he had signed with the definite understanding that it would not constitute a contract or be executory unless and until appellee specifically agreed to and did furnish the personal supervision of O'Donnell. He averred that when he signed the document and returned it to appellee, he wrote an accompanying letter in which he made that position clear.

Stating that appellant's reply pleading set up "an entirely different fact situation," appellee filed a motion to dismiss "because the Court is without jurisdiction and because this is a forum non conveniens." In support of the motion appellee alleged: (1) that all of the transactions pleaded occurred in Mexico and were governed by the laws of that republic, a civil law nation whose laws the Federal District Court of Texas is not empowered to administer; (2) that appellee was organized as a "western hemisphere trade corporation" (see 56 Stat. 838, 26 U.S.C.A. § 109), all of whose business other than the purchase of equipment in the United States is conducted in Mexico by arrangement with Petroleos Mexicanos, a branch of the Mexican Government; that all of its records are in Mexico and all of the individuals involved in the negotiations with appellant reside and work in Mexico; (3) that the operations being carried on by appellee at that time required the constant presence and supervision of O'Donnell and that it would be virtually impossible to have him and other individuals present for the trial in Texas; (4) that appellant was simply seeking to vex and harass appellee by the institution of the suit in Texas; and (5) that the contract between the parties specifically provided that the interpretation and performance should be governed by the laws of Mexico, both parties expressly submitting themselves to competent tribunals in the Federal District of Mexico and waiving the jurisdiction of any other court or courts.

Excerpts from a deposition of appellant and O'Donnell's testimony taken in support of the motion to dismiss are in the record. In addition to enlarging the position set forth in his pleadings, appellant, did, in effect, admit that all of the negotiations occurred in Mexico. O'Donnell's testimony amplified the position taken by appellee in its motion to dismiss. The trial judge sustained the motion without opinion, and the appeal from his order raises the following questions: (1) is there discretion in the District Court to decline jurisdiction on the ground of inconvenience where both parties are American citizens, the suit is brought at the domicile of the defendant and the only other competent tribunal is in a foreign country; and (2) if such discretion exists, was it properly exercised in the instant case?

The statutory requirements of jurisdiction and venue are fully met in this case, and it is not disputed that there is no other available forum in this country. We have found no authorities directly passing upon the first point raised by appellant, although the general problem presented is not new.[1] There are judicial expressions to the effect that statutory grants of jurisdiction are absolute and cannot be ignored by courts in the exercise of discretion. See Cohens v. Virginia, 6 Wheat. 264, 5 L.Ed. 257; Hyde v. Stone, 20 How. 170, 15 L.Ed. 874; Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226; The Neck, D.C.Wash., 138 F. 144; and Momand v. Paramount Pictures Distributing Co., D.C.Mass., 19

---

1. Compare The Saudades, D.C.Pa., 67 F.Supp. 820.

F.Supp. 102. See also cases cited in 32 A.L.R. 6, et seq.

■ That such expressions are unsoundly broad and general is clear, for it has also been held that there exists in the federal courts an inherent power to decline jurisdiction in the interest of justice; and the doctrine of *forum non conveniens* is now well established in federal practice. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055; Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067.

As early as 1897, in passing upon the propriety of the trial court's dismissal of a suit between a resident of Texas and a resident of Massachusetts on a cause of action arising in Mexico, this court remarked that "the right to sue is specifically granted by statute, and appears to be absolute." However, it proceeded to discuss and pass upon the merits of the defendant's contentions of inconvenience and impropriety, although the doctrine of *forum non conveniens*, as such, was not then an integral part of the federal practice. Evey v. Mexican Central Ry. Co., 5 Cir., 81 F. 294. Similar decisions followed in Mexican Central Ry. Co. v. Marshall, 5 Cir., 91 F. 933, and Mexican Central Ry. Co. v. Jones, 5 Cir., 107 F. 64.

In admiralty, courts have often refused to entertain actions between aliens, or between citizens and aliens where foreign law would govern the issues, and have relegated the litigants to the foreign court. See, for example, Canada Malting Co. v. Paterson Steamships, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837, and cases there cited; United States Merchants' & Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line, 2 Cir., 65 F.2d 392. See also DeSairigne v. Gould, D.C.N.Y., 83 F.Supp. 270, affirmed 2 Cir., 177 F.2d 515.

Very few such cases, however, have specifically applied the doctrine of *forum non conveniens* by name. Rather, such action has been explained on the ground that admiralty courts, like those of equity, have greater and more unrestricted jurisdictional discretion because of the nature of the proceedings over which they sit. Grignon's Lessee v. Astor, 2 How. 319, 337, 43 U.S. 319, 337, 11 L. Ed. 283; United States Merchants' & Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line, supra. See Mr. Justice Black, dissenting in Gulf Oil Corp. v. Gilbert, 330 U.S. 512, 67 S. Ct. 845, 91 L.Ed. 1055. And the very fact that admiralty courts have wide and practical powers was held in at least one case to require the trial of issues thought by the trial court to impose too great a burden of inconvenience upon it and the defendant. See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206.[2]

■ In the academic sense, there is much to be said in favor of appellant's contention that no discretion exists in this case. This nation has historically been most solicitous of its citizens' welfare and its courts exist as much for the adjudication of its citizens' controversies as for the enforcement of its laws. Particularly is that true with respect to the diversity jurisdiction of the federal courts, for that jurisdiction was established because of the desire to insure a competent and impartial tribunal for citizens of different states.

■ Where a citizen has an option of bringing his action in one of two *United States* courts, it is neither unreasonable nor arbitrary to require him in a proper case to bring it in that court which can most conveniently and expeditiously de-

2. In that case the Supreme Court remarked: "The doctrine [*forum non conveniens*] is of long standing in admiralty, but this Court has not previously had to apply it to a suit brought by a United States citizen. * * * We need not now decide the abstract question whether United States admiralty courts may decline jurisdiction over libels brought by United States citizens." 339 U.S. 697, 70 S.Ct. 869.

termine the issues.[3] Congress has specifically granted the power to transfer in certain cases, 28 U.S.C.A. § 1404, and there are many cases approving the declination of jurisdiction on the ground of inconvenience.

In all such cases, save the admiralty decisions previously mentioned, there has been at least one other forum *in the United States* in which the suit might have been brought. The clash was between *United States* courts of concurrent jurisdiction, and we have found no cases in which a resident citizen suing in his own right was dispatched to a foreign court. It strikes us as being inconsistent with the very purpose and function of the federal courts to hold that one may decline to hear a case and thereby in effect decree that a citizen must go to a foreign country to seek redress of an alleged wrong. Nevertheless, because we are of the belief that it is unnecessary to do so here, we are not prepared flatly to hold that no discretion exists in *any* such case to decline jurisdiction. Experience has taught that such a holding may prove unsound in extreme cases; and the Supreme Court in the Swift case, supra, declined to pass upon a similar point. We leave that question open.

■ We do, however, express the view that courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country. We find no such circumstances or manifest injustice here; and discretion, if it exists, cannot sustain the trial court's action in dismissing the suit.

■ There are, no doubt, difficulties in attempting to determine and apply foreign law; but the necessity to do so often occurs. The federal courts in diversity cases often encounter difficulty in determining the law of the very state in which they sit. See, for example, Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; Wright v. Paramount-Richards Theatres, 5 Cir., 198 F.2d 303. In such cases, the rules of the foreign law and their interpretation are simply questions of fact, and the conclusion is as reviewable as any other fact issue. See Liechti v. Roche, 5 Cir., 198 F.2d 174; Daniel Lumber Co. v. Empresas Hondurenas, S.A., 5 Cir., 215 F.2d 465. A different situation might be presented if the federal court were being asked to enforce some equitable or otherwise unusual relief peculiar to the foreign law, but here the appellant is simply seeking a money judgment which, so far as the record shows, can be executed against appellee in Texas. The fact that success or failure depends upon the law of Mexico does not, of itself, justify dismissal.[4]

■ Neither are we impressed by the allegations that appellee's operations are carried on primarily in Mexico. It must be remembered that appellee is a *Texas corporation* and that this suit was brought at its *domicile* which its incorporators chose and established. So far as we know, appellee has no other place of business in this country; surely it

3. "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." Gulf Oil Corp. v. Gilbert, 330 U.S. 506, 67 S.Ct. 842.

4. In Evey v. Mexican Central Railway Co., supra, this court quoted from Herrick v. Minneapolis & St. L. Railway Co., 31 Minn. 11, 16 N.W. 413, and we think the remarks are pertinent here: "Every day our courts are enforcing rights under foreign contracts where the lex loci contractus and the lex fori are altogether different, and yet we construe these contracts and enforce rights under them according to their force and effect under the laws of the state where made. To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens." 81 F. 304.

cannot complain of being sued at its headquarters and domicile on the ground that a major portion of its actual operations occurs elsewhere.

■ Appellee's argument that all negotiations occurred in Mexico, that all its witnesses are there and that it will cause an extreme hardship to remove its employees from their work in Mexico is a serious one. In different circumstances, it would be more meritorious; but here we are of the opinion that the obvious inconvenience to appellee is offset by other factors. We again advert to the fact that appellee is being sued at its domicile—in the state where it chose to organize. Further, appellant himself is necessarily inconvenienced in having to prosecute his claim far removed from his own residence, and to force him to litigate in Mexico would only compound that disadvantage. It should also be observed that O'Donnell, the witness so heavily relied upon by appellee, was personally present in Amarillo when his testimony was taken in support of the motion to dismiss.

■ Appellee also contends that appellant is simply seeking to vex and harass it, citing several acts or "threats" on the part of appellant. The short answer to this contention is that there is nothing in the record to show that such acts, if they occurred, were not justified, or at least based upon good cause. In view of the other circumstances previously mentioned, we cannot ascribe that motive to appellant.

■ Appellee finally contends that its contract with appellant restricts the parties to Mexican courts in express terms. It is sufficient to point out that one of the important questions, probably the basic issue, raised by the pleadings is whether or not the negotiations ever matured into a contract. It would be incongruous to remand the appellant to Mexico because of provisions in a contract the very existence of which is in dispute.

For the reasons assigned, the judgment of dismissal is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.