751 F.2d 801
 1986 A.M.C. 1058
 PACIFIC EMPLOYERS INSURANCE COMPANY, Plaintiff-Appellant,
v.
M/V CAPT. W.D. CARGILL, her engines, tackle, apparel,
furniture, etc., in rem, and the United Kingdom
Steamship Assurance Association, Ltd.,
in personam, Defendants-Appellees.
 No. 84-3139.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 1, 1985.
 
 Charles Kohlmeyer, Jr., Patrick Johnson, Jr., Andrew S. deKlerk, New Orleans, La., for plaintiff-appellant.
 Donald A. Lindquist, Kenneth J. Servay, New Orleans, La., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before THORNBERRY, GARWOOD, and HILL, Circuit Judges.
 ROBERT MADDEN HILL, Circuit Judge:
 
 
 1
 This is an appeal from the dismissal of a declaratory judgment sought by Pacific Employers Insurance Company (Pacific), the insurer of cargo interests on the M/V CAPTAIN W.D. CARGILL, in anticipation of a subsequently filed suit against Pacific by the United Kingdom Mutual Steam Ship Assurance Association (U.K. Club), the ship's insurer, for a contribution by Pacific on behalf of cargo interests to a general average statement. The M/V CARGILL had caused extensive damage to pipelines in the Mississippi River and its insurer had paid the pipeline owner and contractor for the damage. Pacific sought in the declaratory judgment action to avoid liability for its contribution under the general average statement--the very issue it was to be sued on by the ship's insurer in a Belgian court. Finding no abuse of discretion by the trial court in dismissing the anticipatory action, we affirm.
 
 FACTS
 
 2
 In 1976, the M/V CARGILL, while enroute from Baton Rouge, Louisiana, to Hamburg, West Germany, briefly lost power and dropped anchor in the Mississippi River to avoid collision with tugboats there. The ship's action caused extensive damage to pipelines under construction in the Mississippi River bed and the loss of both anchors. Nevertheless, after a short delay, the ship proceeded to its destination. The cargo's insurer, Pacific, executed a general average guarantee, permitting the cargo to be discharged at Hamburg. Under the usual procedure in maritime casualty losses, the insurer of the vessel, U.K. Club, sought a general average statement[1] from the College Van Dispaucheurs in Antwerp, Belgium. The general average statement was issued on December 11, 1982: it valued the cargo at $12,856,66.22 and the vessel at $5,400,000.[2] U.K. Club paid the pipeline owner and contractor for the damage. Under the general average statement Pacific and other cargo interests were to contribute nearly $3 million.
 
 
 3
 On August 25, 1983, Pacific filed suit and sought a declaratory judgment absolving it of its contribution to the general average.[3] It filed the action in the United States District Court for the Eastern District of Louisiana. On October 31, 1983, prior to being served in the United States action, U.K. Club filed a suit[4] seeking to collect the general average contribution from Pacific in Antwerp, Belgium. On December 8, 1983, U.K. Club filed a motion to dismiss the declaratory judgment action alleging that Pacific brought the declaratory judgment action in anticipation of U.K. Club's suit to collect the contribution.[5] The district court, noting that Pacific did not serve U.K. Club with process as to the declaratory judgment action until after U.K. Club had selected a Belgian forum, found Pacific to have brought an anticipatory action and to have abused judicial procedure as to its use of the declaratory judgment action. Pacific has timely appealed from the final judgment dismissing its declaratory judgment action.
 
 ANALYSIS
 
 4
 (1) Standard of Review
 
 
 5
 The review of a district court's decision whether to provide declaratory judgment relief is limited to the question of whether the district court abused its discretion. See Mission Insurance Co. v. Puritan Fashions Corp., 706 F.2d 599, 601 (5th Cir.1983). In Puritan Fashions, this Court noted that a "district court ... is not required to provide declaratory judgment relief, and [that] it is a matter for the district court's sound discretion whether to decide a declaratory judgment action." Id.
 
 
 6
 (2) Anticipatory Declaratory Judgment
 
 
 7
 This Court has stated that a proper factor to consider in dismissing a declaratory judgment suit is whether the suit was filed in anticipation of another and therefore was being used for the purpose of forum-shopping. Puritan Fashions, 706 F.2d at 602 & n. 3; accord Ven-Fuel, Inc. v. Dep't of Treasury, 673 F.2d 1194, 1195 (11th Cir.1982). The district court based its decision to dismiss on a finding that Pacific's declaratory judgment suit was filed in anticipation of a suit filed two months later by U.K. Club in another jurisdiction to collect the general average contribution that Pacific sought to defeat in the declaratory judgment action. The district court was also influenced in its decision by Pacific's unexplained delay in serving the defendant U.K. Club until after the second suit was filed. The court concluded that the delay indicated an abuse of judicial procedure in trying to control the forum of the plaintiff's action. The district court did not abuse its discretion in refusing to hear the declaratory judgment action.
 
 
 8
 (3) Forum Non Conveniens
 
 
 9
 While the district court's dismissal of the declaratory judgment action may be affirmed without any consideration of the appropriateness of the forum for the action on the general average to be brought, the court did make reference to the appropriateness of the Belgian forum, and, therefore, Pacific's argument concerning its right to choose a forum for the litigation in question will be addressed.
 
 
 10
 Pacific contends that as a United States citizen it is entitled to litigate its claim in an American court, relying on Burt v. Isthmus Development Co., 218 F.2d 353 (5th Cir.), cert. denied, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955). Burt was a forum non conveniens case in which this Court made the following observation that Pacific would have govern here:
 
 
 11
 We ... express the view that courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising ... discretion to deny a citizen access to the courts of this country.
 
 
 12
 Id. at 357 (dictum). The usual factors to be weighed by a court in a forum non conveniens case such as Burt include the following:
 
 
 13
 [plaintiff's] choice of forum; status of the parties; convenience of parties and witnesses; access to sources of proof; cost of obtaining the attendance of willing witnesses; possibility of a view of the premises, if appropriate, relative advantages and obstacles to a fair trial; and possible difficulty in the application of foreign law.
 
 
 14
 Mobil Tankers Co. v. Mene Grande Oil Co., 363 F.2d 611, 613 (3d Cir.), cert. denied, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966). A general principle in forum non conveniens cases is that
 
 
 15
 [a] plaintiff's choice of forum is entitled to great weight and will not be disturbed except upon a clear-cut showing by the defendant that the convenience and justice for all parties demands that the litigation proceed elsewhere.
 
 
 16
 Argyll Shipping Co. v. Hanover Insurance Co., 297 F.Supp. 125, 129 (S.D.N.Y.1968) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).
 
 
 17
 The dictum in Burt quoted above would modify the general rule giving the plaintiff the choice of forum for United States citizens, such that neither plaintiff nor defendant would be denied access to an American forum except in extreme circumstances. In fact, in Burt, this Court reversed the discretionary dismissal on forum non conveniens grounds of a suit involving a cause of action that arose in Mexico governed by Mexican law, that the defendant wished to be brought in Mexico, but that the plaintiff had filed in Texas, the domicile of the defendant. Both parties to the lawsuit were United States citizens. 218 F.2d at 355, 358.
 
 
 18
 First, Burt is readily distinguishable from the present anticipatory declaratory judgment action as a forum non conveniens case. The case sub judice was determined primarily on the ground that it was a declaratory judgment action improperly brought in anticipation of another action, and as an abuse of judicial procedure. A district court's discretion in dismissing declaratory judgment actions is not directly governed by considerations relevant in a suit dismissed under the forum non conveniens doctrine. Stated differently, the factors to be considered by the district court in exercising its sound discretion concerning the dismissal of a declaratory judgment action are not the same factors that are to be considered by a district court in exercising its sound discretion in dismissing a case under the forum non conveniens doctrine. Pacific has tried to impose a consideration found appropriate in a forum non conveniens case, the United States citizenship of a party, to a declaratory judgment action. The argument is not persuasive in showing that the district court abused its discretion in the case sub judice.
 
 
 19
 Further, even in a forum non conveniens case, a federal district court retains its discretion to decline to hear an action by an American citizen when the alternative forum is a foreign court. See Burt, 218 F.2d at 357. The Supreme Court has recently weakened even the admonition of Burt against depriving a United States citizen of the choice of a home forum in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). There the Court observed:
 
 
 20
 A citizen's forum choice should not be given dispositive weight, however .... Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.
 
 
 21
 Id. 454 U.S. at 255, n. 23, 102 S.Ct. at 266, n. 23. Thus, despite Pacific's argument that as a United States citizen its choice of a home forum is entitled to greater deference by a United States court than a foreigner's choice, a United States court in a forum non conveniens case is not required to make its determination on that factor alone, nor would it have abused its discretion in not heavily weighing that factor.
 
 
 22
 Finally, Pacific's argument is even further weakened by Pacific's own actual status[6] as the insurer of the cargo owned by foreign interests. The cargo owner is not a United States citizen, and Pacific by entering into the guarantee agreement that permitted the unloading of the cargo in Hamburg stepped into the shoes of the foreign cargo owner. In Del Monte Corp. v. Everett Steamship Corp., 402 F.Supp. 237, 243 (N.D.Ca.1973), Del Monte based its action on the right of a Japanese corporation and it was not treated as a United States citizen suing in its own right. Pacific stands in a similar position in representing the interests of the cargo owners. Therefore, even if the forum non conveniens considerations of Burt applied to this case, Pacific is not in a position to benefit from any preference given to United States citizens for a home forum.
 
 CONCLUSION
 
 23
 The district court did not abuse its discretion in dismissing the declaratory judgment action as anticipatory. We decline to impose the dictum of Burt v. Isthmus Development Co., 218 F.2d 353 (5th Cir.), cert. denied, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955), on the case sub judice. Considerations relevant to a forum non conveniens decision are not strictly applicable to this case; however, even if they were to be applied, the dismissal of the action would remain proper given that Pacific stands in the shoes of a foreign cargo owner.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The principle of general average is that "loss for the common benefit which is incurred by one who partakes in a maritime venture should be shared ratably by all who participate in the venture." Cia. Atlantica Pacifica, S.A. v. Humble Oil & Refining Co., 274 F.Supp. 884, 891 (D.Md.1967). The ship generally has the duty to declare average, and pending a general average adjustment, it has "a lien upon the cargo for such contributory share as, under the facts of the case, the cargo owners might be bound to pay ..." Id. (citations omitted). As in this case, a general average guarantee is often used to circumvent the inconvenience of liens upon the cargo. Id. at 892. The insurer entering into a guarantee stands in the shoes of the cargo owners
 
 
 [2]
 The adjustment of general average is a highly complex matter which usually ... requires preparation of a written statement setting forth the intricate computations pursuant to which contributions, said to be owing, are determined. In the context of current maritime complexities, such statements may be a number of years in preparation
 Humble Oil, 274 F.Supp. at 892. In the case sub judice, the general average statement was issued about six years after the accident.
 
 
 [3]
 Pacific wishes to contest its contribution on the grounds that the vessel made no sacrifice of a general average nature and that it was unseaworthy when it embarked
 
 
 [4]
 A general average statement without any agreement by the parties otherwise has no legal effect of its own. Humble Oil, 274 F.Supp. at 893. Thus, the shipowner may have to bring a legal action to obtain the contribution suggested in a general average statement
 
 
 [5]
 Pacific argues on appeal that it filed the declaratory action to absolve itself "of an enormous possible liability that had remained outstanding for a very long time." Pacific argues that its action was therefore not anticipatory. The district court properly focused on the time frame since the issuance of the general average statement rather than since the casualty in finding the action to be anticipatory. See supra note 2 concerning the usual time frame for issuing a general average statement
 
 
 [6]
 It may be argued also that in its role as insurer of the cargo, Pacific would or should have expected the possibility of answering in a foreign jurisdiction under a general average ruling in the event the vessel was involved in an accident. This argument is not presented as an additional basis for affirming the dismissal, but as a comment on Pacific's reluctance to have the issue of its contribution to the general average heard in the forum where it would most likely be raised