**MARSIN MEDICAL INTERNATIONAL, INC., Plaintiff,**

v.

**BAUHINIA LTD., Defendant.**

No. CV–95–4802.

United States District Court, E.D. New York.

Nov. 15, 1996.

184

David S. Tannenbaum, Duane, Morris & Hecksher, New York City, for plaintiff.

Scott S. Greenspun, Braverman & Associates, P.C., New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff Marsin Medical International, Inc. ("Marsin") brought this diversity action against defendant Bauhinia Ltd. ("Bauhinia") to recover for breach of contract and fiduciary duty. Bauhinia moves for dismissal under Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)2") for lack of personal jurisdiction, or in the alternative, under the doctrine of *forum non conveniens*, arguing that the Eastern District of New York is an inappropriate forum for this case. For the reasons that follow, the Court denies the defendant's motion.

## FACTS

For the purposes of this motion, the following facts are presumed true. Defendant Bauhinia, a Hong Kong corporation, locates products manufactured in the Far East for United States distributors. Ng Aff. ¶ 3. Bauhinia's principal place of business is Hong Kong. It is not authorized to do business in New York, nor does it have offices, employees, inventory, bank accounts, telephone numbers or a mailing address in this state. Ng Aff. ¶¶ 4, 5. In 1990, plaintiff Marsin, a Pennsylvania medical supply company, introduced Bauhinia to Cross Country Paper Products Corporation ("Cross Country"). Cross Country is a dental supply company located in New York. Marsin introduced the two companies in the hopes that Cross Country would order cotton-filled gauze through Bauhinia. Complaint ¶ 7; Sinkow Aff. ¶ 2; Ng Aff. ¶ 9.

To convince Cross Country to place an order through Bauhinia, Bauhinia and Marsin communicated regularly with each other and with Cross Country in late 1989 and throughout 1990. Sinkow Aff. ¶¶ 7–9. Bauhinia Director Richard Ng, on behalf of his company, participated in these initial negotiations by making phone calls and sending faxes from Hong Kong to Cross Country in New York. Sinkow Aff. ¶ 9. In September 1990, Ng accompanied Adolph Sinkow, Marsin's president, to Cross Country's offices on Long Island in New York to meet with individuals associated with Cross Country. Sinkow Aff. ¶¶ 10, 11. Sinkow affirms that Ng "made other sales calls on Cross Country in New York" after his September 1990 visit and that unspecified "Bauhinia representatives have met with representatives of Cross Country in New York since the initial 1990 meeting." Sinkow Aff. ¶¶ 12, 30. At some point presumably during 1990, Cross Country began ordering cotton-filled gauze through Bauhinia. Complaint ¶ 7; Ng Aff. ¶ 9.

According to Sinkow, sometime after Bauhinia and Marsin initiated negotiations with Cross Country, Bauhinia agreed to pay Marsin commissions on all Cross Country's cot-

ton-filled gauze orders. Sinkow Aff. ¶¶ 6, 14. Bauhinia initially complied, but later ceased paying commissions to Marsin. Complaint ¶ 8. Marsin brought this action for the balance of the payments. Bauhinia counters that it was only obligated to pay commissions until it reimbursed Marsin for an earlier shipment of latex gloves. Ng Aff. ¶¶ 6–11. Although the parties dispute the terms of the commission agreement, they agree that Sinkow and Ng negotiated the agreement on behalf of their respective companies while Sinkow was in Pennsylvania and Ng was in Hong Kong. Sinkow Aff. ¶ 14; Ng Aff. ¶ 11.

## DISCUSSION

### I. Personal Jurisdiction

#### A. *Motion to Dismiss Standards*

Prior to discovery, a plaintiff may defeat a Rule 12(b)(2) motion to dismiss a complaint by a prima facie showing of in personam jurisdiction over the defendant. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). The plaintiff can satisfy this burden on the basis of her allegations alone, "by pleading in good faith ... legally sufficient allegations of jurisdiction." *Ball v. Metalurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). At this early stage in the case, a court should construe all pleadings and any affidavits before it in the light most favorable to the plaintiff, *Id.,* to determine whether facts "may exist" that would satisfy jurisdictional requirements. *PC COM, Inc. v. Proteon, Inc.,* 906 F.Supp. 894, 905 (S.D.N.Y. 1995).

#### B. *Personal jurisdiction requirements*

A federal court sitting in New York may exercise personal jurisdiction over a foreign corporation if the corporation's contacts with New York meet the requirements of Due Process and if (1) the corporation is either "present" in New York State for purposes of New York State Civil Practice Law Rules ("CPLR") Section 301, or (2) the corporation's contacts with New York meet the requirements of the New York State Long Arm Statute. CPLR § 302. *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 222–31 (2d Cir.1963) (the law of the forum state governs whether a federal court has personal jurisdiction over a defendant in a diversity action).

#### (i) Due Process

The requirements of Due Process are satisfied if a defendant's contacts with the forum state are such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). CPLR §§ 301 and 302 permit New York courts a jurisdictional reach that is somewhat narrower than the maximum permissible under the Due Process clause. *Longines–Wittnauer Watch Co., Inc. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (Ct.App.), *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

#### (ii) CPLR § 301

CPLR Section 301 provides, "a court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore." As construed by the courts of New York, this section would authorize this Court to exercise personal jurisdiction over a foreign corporation like Bauhinia if it "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990) (quoting *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 322–323 (N.Y.Ct.App.1981)). To justify the exercise of personal jurisdiction under this provision, Marsin would have to demonstrate that Bauhinia is present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil,* 918 F.2d at 1043 (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915 (1917)). The test of a corporation's presence is fact based and case specific. However, to determine whether a foreign corporation engages in a continuous and systematic course of business in New York State, courts typically consider whether the corporation main-

tains an office, mailing address or telephone number in New York; whether it solicits business in New York or owns bank accounts or other property in New York, and/or whether the corporation has New York employees or agents. *Id.; Guardino v. American Savings & Loan Ass'n of Fla.*, 593 F.Supp. 691, 693 (E.D.N.Y.1984).

In support of its argument that it is not present in New York State for purposes of CPLR Section 301, Bauhinia Director Ng affirms that Bauhinia's offices are located in Hong Kong, which is Bauhinia's principle place of business. Ng Aff ¶ 2. Ng also states that Bauhinia has never been authorized to do business in New York, has never maintained offices, bank accounts or inventory in New York, and has never had a New York telephone number. Ng Aff. ¶ 4. Moreover, Ng asserts that Bauhinia does not advertise or otherwise actively solicit business in New York. Ng Aff. ¶ 5. According to Ng, Bauhinia only makes contact with New York when it arranges for the shipment of goods into the state. Ng Aff. ¶ 5.

In response, Marsin counters that Bauhinia is "doing business" in New York by virtue of "its extensive transactions with Cross Country and other New York businesses." Pl. Memo of Law p. 12–13 n. 2. To substantiate this claim, Marsin asserts that Bauhinia has arranged for goods to be shipped into New York and that Bauhinia's officers routinely attend business meetings and trade shows in New York. Sinkow Aff. ¶¶ 29–35. This evidence is insufficient to show that Bauhinia is doing business in New York State. Balancing all the relevant evidence in this case, and considering Bauhinia's strong showing that it lacks a New York presence, Marsin fails to state even a prima facie case that Bauhinia is subject to personal jurisdiction under CPLR § 301. *See Landoil Resources Corp. v. Alexander & Alexander,* 918 F.2d 1039, 1045–46 (2d Cir.1990) (foreign corporation not authorized to do business in New York State, and lacking New York offices, bank accounts, telephone numbers, mailing address, employees, and property, not present in New York for § 301 purposes

despite defendant's representatives' periodic trips to New York for business, since New York "transactions must be considered not in isolation, but against the background of multinational entities doing a much larger business of which these transactions were but a small part"); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir.1985) (foreign corporation without New York offices, phone numbers, employees, affiliates and property not present in New York for purposes of CPLR § 301 despite repeated visits to New York by corporation's president and sole shareholder to discuss business issues with plaintiff); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 763 (2d Cir.1983) (shipment of goods to New York does not *ipso facto* constitute doing business for purposes of CPLR § 301); *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 953 (2d Cir.1967) (occasional visits by company Vice President to New York to solicit business and negotiate contracts for defendant, where not significantly regular or extensive, do not justify the exercise of personal jurisdiction under CPLR § 301); *Lane v. Vacation Charters, Ltd.,* 750 F.Supp. 120, 125 (S.D.N.Y.1990) (corporate officers attendance at trade show insufficient to establish that corporation is doing business in New York for purposes of CPLR § 301).

### (iii) CPLR § 302

Although this Court cannot exercise personal jurisdiction over Bauhinia under CPLR Section 301, it may exercise personal jurisdiction over Bauhinia under New York's Long Arm Statute, CPLR Section 302. Section 302 provides in pertinent part:

(a) **Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state.[1]

CPLR § 302.

To justify the exercise of personal jurisdiction under this section, a plaintiff

---

1. The second clause of § 302(a)1 provides for

jurisdiction where a cause of action arises out of

must demonstrate that a defendant entered into (1) at least one business transaction in New York, (2) that was substantially related to the claim the plaintiff is pursuing before the court. *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F.Supp. 175, 179 (S.D.N.Y.1995). To meet the minimum contacts requirements of Constitutional Due Process, the transaction must be one through which the defendant " 'purposefully avail[ed] itself of the privilege of conducting activities within ... [the] State' and thereby 'invok[ed] the benefits and protections of its laws.' " *Longines–Wittnauer Watch Co., Inc. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 19, 209 N.E.2d 68, 76 (Ct.App.1965) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). Far more limited New York contacts are required to establish a New York transaction for § 302(a)1 purposes than are necessary to show that a defendant is "doing business" in New York for purposes of § 301. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d at 58. However, no precise formula exists to dictate whether a defendant has engaged in sufficiently purposeful activity to trigger § 302(a)1 jurisdiction. Instead, a court must examine the totality of circumstances to find whether an adequate basis for jurisdiction has been alleged. *Pilates,* 891 F.Supp. at 179.

In its recent decision *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25 (2d Cir.1996), the Second Circuit listed a variety of factors a court may consider when it determines whether an out-of-state defendant transacted business in New York for purposes of § 302(a). The factors relevant to this case are:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation, [and] (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of

meeting with parties to the contract regarding the relationship.

*Agency Rent A Car,* 98 F.3d at 29.

Each of these factors is present in this case. First, Bauhinia admits that it has an on-going contractual relationship with Cross Country, a corporation located in New York. Ng. Aff. ¶¶ 9, 10. Second, Marsin President Sinkow affirms that Bauhinia Director Ng came to New York on at least one occasion to make a sales call on Cross Country to negotiate a possible future contract. Sinkow Aff. ¶ 10. Third, Sinkow further affirms that since September 1990, "Ng has made other sales calls on Cross Country in New York" and other "Bauhinia representatives have [also] met with representatives of Cross Country in New York." Sinkow Aff. ¶¶ 12, 30.

The *Agency Rent A Car* opinion goes on to specify that "Although all [of the factors listed] are relevant, no one factor is dispositive. Other factors may also be considered." *Id.* at 29. Accordingly, other courts conducting § 302(a)1 analyses have weighed a defendant's telephone and mail contacts, where the defendant "projected himself into New York in such a manner that he purposely availed himself of the benefits and protections of its laws." *Klagsbrun v. Ross,* No. 93 Civ. 7709, 1995 WL 43664 at *3 (S.D.N.Y. Feb. 3, 1995) (quoting *Milliken v. Holst,* 205 A.D.2d 508, 612 N.Y.S.2d 660, 661 (2d Dep't 1994)). Such purposeful mail and telephone contact has also been alleged in this case. *See* Sinkow Aff. ¶ 9. Further, because the "ultimate determination is based on the totality of the circumstances," *Agency Rent A Car,* 98 F.3d at 29, in appropriate cases, courts have found jurisdiction under § 302(a)1 although only one of the factors listed above is present. *See e.g., Liquid Carriers Corp. v. Am. Marine Corp.,* 375 F.2d 951 (2d Cir.1967) (basing the exercise of § 302(a)1 personal jurisdiction on the substantial preliminary contract negotiations conducted in New York by a defendant's high-level personnel). In this case, taken together, Bauhinia's on-going

---

a defendant's contract, entered into "anywhere to supply goods or services in the state." This provision is inapplicable to a defendant like Bauhinia that "was not a seller or supplier of goods

but a buying agent" whose job it was to "locate a manufacturer for ... goods in question." *Arrow Trading Co., Inc. v. Sanyei Corp. (Hong Kong), Ltd.,* 576 F.Supp. 67, 71 (S.D.N.Y.1983).

contractual relationship with Cross Country, a New York corporation; its directors' and representatives' trips to Cross Country in New York; and its participation in negotiations with Cross Country by phone and fax, are more than adequate to constitute business transactions for purposes of § 302(a)1.

■ Having found that the defendant engaged in New York business transactions, the Court must next determine whether "the cause of action is sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 59 (2d Cir. 1985). In *Hoffritz,* the Second Circuit considered the New York contacts of a foreign corporation alleged to have breached several terms of a contract relating to its Georgia Hoffritz franchise. Although the activities constituting the alleged breach took place in Georgia, the court found that defendant's frequent meetings with the plaintiff in New York to discuss the terms of its business were New York business transactions "sufficiently related" to the cause of action to justify the exercise of personal jurisdiction under § 302(a)1.

■ Similarly, this case concerns the out of state breach of a contract whose terms defendant Bauhinia negotiated, at least in part, while physically present in New York. The New York transactions are therefore "sufficiently related" to this cause of action to justify the exercise of jurisdiction. As the Second Circuit pointed out in *Hoffritz,* there is no requirement that the activity constituting the breach occur in New York because such a requirement "would lead to the unusual result that a New York court would have jurisdiction of only certain claims arising from the breach of an otherwise indivisible contract." *Hoffritz,* 763 F.2d at 59. Where as here, the terms of Bauhinia's agreement to supply goods to Cross Country could be adjudicated before a New York court, the dispute between Bauhinia and Marsin, arising as it does out of the same agreement, should be cognizable by the same tribunal.

■ In its memorandum of law, Bauhinia argues that this Court should not exercise jurisdiction under the New York's Long Arm Statute because plaintiff Marsin is a Pennsylvania corporation. However, an out of state plaintiff may bring an action in New York if it can demonstrate, as Marsin has, that the defendant invoked the benefits and protections of New York law through a New York business transaction and that that transaction had a nexus with the cause of action sufficient to satisfy the requirements of Due Process. *See Nat'l Iranian Oil Co. v. Commercial Union Ins. Co. of N.Y.,* 363 F.Supp. 129, 134 (S.D.N.Y.1973).

The cases Bauhinia cites in support of its arguments for dismissal are distinguishable from this one. In *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757 (2d Cir.1983), the Second Circuit dismissed a New York corporation's declaratory judgment action against a California resident because the defendant's only contacts with New York were her shipments of goods into New York State and a letter to the plaintiff threatening suit. Neither of these contacts met both the requirements for jurisdiction under § 302. The Second Circuit found that the shipments, far from beings sufficiently related to the plaintiff's case, were in fact "irrelevant" to the declaratory judgment suit. The court also found that the defendant's letter, although related to the declaratory judgment suit, was not a transaction of business. By contrast, Bauhinia's sales calls on Cross Country in New York were New York business transactions and also were sufficiently related to the Marsin's cause of action to justify the exercise of personal jurisdiction over Bauhinia.

Also distinguishable is the Second Circuit's 1970 decision in *Fontanetta v. Am. Bd. of Internal Med.,* 421 F.2d 355 (2d Cir.1970). In that case, the Second Circuit found that the foreign corporate defendant's administration of a written examination in New York did not justify the exercise of personal jurisdiction under § 302(a)1 since the plaintiff's suit concerned the results of oral examinations the defendant had conducted outside New York several years later. The court found the defendant's New York activity to be too remote from the suit to justify the

exercise of jurisdiction. No comparable temporal gap exists in the present case.

## II. Forum Non Conveniens

 As a second ground for dismissal, Bauhinia argues that this Court should invoke the doctrine of *forum non conveniens* so that this action may be adjudicated in Hong Kong. The doctrine of *forum non conveniens* permits a court, at its discretion, to dismiss a case over which it technically has jurisdiction "when an alternative forum has jurisdiction to hear the case," and when (1) trial in the chosen forum "would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience'" or (2) the chosen forum is "inappropriate because of considerations affecting the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947)). As the doctrine of *forum non conveniens* is a rule of venue and not of decision, its application in federal court is governed by federal law. *Rivendell Forest Prods., Ltd. v. Canadian Pacific Ltd.,* 2 F.3d 990, 992 (10th Cir. 1993) (citing the "virtually unanimous precedent" in support of a federal court's application of the federal law of *forum non conveniens* ).

 The moving party bears the burden of proof under this doctrine, and it is not an easy burden to meet as " 'there is ordinarily a strong presumption' in favor of the plaintiff's choice of forum." *Piper Aircraft,* 454 U.S. at 255, 102 S.Ct. at 265–66. To prevail, the moving party must demonstrate that an adequate forum exists and that on balance, private and public factors favor dismissal. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). For its part, the plaintiff must illustrate the conveniences it anticipates from a trial in its chosen forum. *Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843.

## A. Defendant's alternative forum

 To show that an adequate alternative forum exists, Bauhinia must demonstrate that it is amenable to process and that it will waive any statutes of limitations applicable to the plaintiff's cause of action in its proposed alternative forum. *Piper Aircraft,* 454 U.S. at 242, 102 S.Ct. at 258–59; *Nationsbank of Fla. v. Banco Exterior de Espana,* 867 F.Supp. 167, 170 (S.D.N.Y.1994). Bauhinia satisfies this burden through the affidavit of Director Ng who affirms that Bauhinia will "consent to: (a) personal jurisdiction in the High Court of Hong Kong, [and] (b) waive any defense based on the statute of limitations which arose after [this] federal court action was commenced." Ng Aff. ¶ 14.

 Under exceptional circumstances, a forum may be inadequate "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254, 102 S.Ct. at 265. However, "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight" even if "the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Piper Aircraft,* 454 U.S. at 247, 250, 102 S.Ct. at 261, 263. In support of its contention that a Hong Kong trial would offer Marsin an adequate and satisfactory remedy, Bauhinia offers the affidavit of Hong Kong solicitor William Nicholas Giles. Giles affirms that "the High Court of Hong Kong would assume jurisdiction over this dispute and that Marsin could reinstate the same claims in the High Court of Hong Kong should the New York Federal District Court dismiss the action." Giles Aff. ¶ 2. Giles further affirms that Marsin's claims for damages and an accounting would fall under the High Court's jurisdiction, and that each party would have the right to appeal an adverse ruling. Giles Aff. ¶¶ 3, 4.

In response, Marsin argues that the more stringent pleading requirements of the Hong Kong Courts would limit its chances for recovery. Marsin offers no evidence that the tribunals of Hong Kong require more detailed pleadings than do the United States Courts. However, even if it had, and even if that difference in law limited Marsin's chances for recovery, such evidence would be inadequate to defeat the defendant's motion

unless Marsin could show that the remedy available in Hong Kong is clearly inadequate or unsatisfactory. No evidence to that effect is before the Court. Marsin further asserts that its interests may be jeopardized by the imminent transfer of Hong Kong sovereignty to communist China. However, any changes that will result from a change of sovereignty over Hong Kong, impossible as they are to predict, are far too uncertain to defeat Bauhinia's motion.

## B. Plaintiff's chosen forum

 As a United States plaintiff suing a foreign defendant, Marsin's forum choice should be given preference. A court should not change the forum unless the balance of relevant factors tilts strongly in the defendant's favor. *Nationsbank*, 867 F.Supp. at 170. That Marsin has its primary place of business in Pennsylvania, not in New York, does not alter this analysis. *Id.* Accordingly, Bauhinia must offer "evidence of 'unusually extreme circumstances' demonstrating that 'material injustice is manifest' to justify overturning plaintiff's choice in favor of a foreign forum." *Nationsbank*, 867 F.Supp. at 171 (quoting *Burt v. Isthmus Dev. Co.*, 218 F.2d 353, 357 (5th Cir.), *cert. denied*, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955)). To defeat Bauhinia's motion, Marsin need only demonstrate the conveniences its chosen forum will offer. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843.

## C. Private interests

 To determine whether dismissal is appropriate, a court must weigh the public and private interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The private interest factors relevant to a determination of a *forum non conveniens* motion include: (1) the relative ease of access to proof; (2) the cost of obtaining attendance of willing witnesses; and (3) any other practical consider-

ations tending to facilitate the easy, expeditious and inexpensive resolution of a cause of action.[2] *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843.

On balance, these private interests militate against dismissal. A New York trial would facilitate access to proof and minimize the cost of obtaining witnesses' attendance. The parties agree that case this concerns Bauhinia's obligation to pay commissions on goods it arranged to ship to Cross Country in the Eastern District of New York. Complaint ¶ 6; Ng Aff. ¶ 11. Clearly, Cross Country employees may be served here, and evidence of gauze shipments will be available in this district. Although Bauhinia argues that it will be forced to call witnesses currently in Hong Kong, beyond the testimony of Director Ng, it fails to demonstrate why deposition testimony from other Bauhinia employees or the employees of its trade corporation would be inadequate. Additionally, Bauhinia argues that all of its relevant documents are in Hong Kong, but this unsurprising assertion does nothing to prove that 'extreme circumstances' would make the transfer of those documents to New York too unduly burdensome. Bauhinia has not demonstrated that the burden it would bear if forced to transfer documents to New York would differ significantly from that of Marsin should the case be tried in Hong Kong. Accordingly, any evidentiary difficulties suffered by Bauhinia are insufficient to outweigh the conveniences of a New York trial for a United States plaintiff.

## D. Public interests

 The public interest factors relevant to a motion to dismiss on *forum non conveniens* grounds include: (1) administrative issues of the sort that may arise if "litigation is piled up in congested centers instead of being handled at its origin"; (2) the burden inflicted on a community when its members, for example, are forced to serve as jurors in

**2.** The additional private interest factors listed in *Gulf Oil* do not favor either forum in this case. First, there has been no showing that this trial will require the testimony of unwilling witnesses, so the existence of compulsory service is not at issue. Second, there has been no showing that a judgment rendered in either forum would not be

enforceable. Third, as discussed in section A. above, defendant's chosen forum will not present any obstacles to a fair trial. Nor, for that matter, will this forum. Finally, Bauhinia does not contend that Marsin has chosen this forum to harass, vex or oppress by the intentional infliction of unnecessary trouble or expense.

a matter unrelated to the district where a matter is being tried; (3) a community's interests in the trial of localized controversies close to home; and (4) whether the court has a familiarity with the law that will govern the dispute. *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843. Like the private interest factors, the public interest considerations do not favor dismissal.

First, as to the question of administrative convenience, although the Eastern District of New York does indeed have a busy calendar, dismissal of this motion will have little effect on the situation. Marsin correctly points out that the simple contract questions at issue in this case will not have a significant impact on this Court's docket. Second, since the disputed commissions relate to shipments to a New York company, the issues in this case are not so remote from the Eastern District as to unduly burden jury members. Third, Bauhinia's assertion that this case is a localized Hong Kong controversy and should therefore be decided in Hong Kong is unpersuasive, in light of the international nature of its negotiations with Marsin and Cross Country. At best, Bauhinia has demonstrated that Hong Kong's interest in this matter is approximately equivalent to that of New York; a showing insufficient to justify dismissal.

 The final public factor relates to choice of law. If foreign law will govern this motion, this factor favors dismissal. Conversely, if United States law controls, choice of law considerations support denial of defendant's motion. *Piper Aircraft,* 454 U.S. at 260, 102 S.Ct. at 268. Since this is a diversity action, this Court must consult the law of New York State for choice of law questions. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). New York follows a "grouping of contacts" or "interest analysis" test to determine the law applicable to a dispute. "Under this test, the law of the jurisdiction having the greatest interest in the litigation is applied." *Nationsbank,* 867 F.Supp. at 173. Factors relevant to a jurisdiction's interest in an action include: (1) the parties' place of incorporation, (2) the parties' principal place of business, (3) the place

where the contract was made, (4) the place where contract negotiations took place, and (5) the place of "the significant activities and performance of the contract." *Whittaker Corp. v. Calspan Corp.,* 810 F.Supp. 457, 461 (W.D.N.Y.1992).

 Most of these factors favor the United States and Hong Kong equally: The defendant is incorporated in Hong Kong, the plaintiff in the United States. The defendant has its principal place of business in Hong Kong, the plaintiff is based in the United States. The defendant negotiated the commission agreement from its Hong Kong offices, the plaintiff from its United States offices. However, Bauhinia's delivery of goods to Cross Country in New York constitutes "significant activities and performance of the contract." Hence, the interests of the United States predominate over those of Hong Kong and therefore this Court would apply United States law to this action. Accordingly, "the preference for having a court familiar with the law decide a case favors retaining this suit." *Nationsbank,* 867 F.Supp. at 173.

In sum, since neither the public nor the private factors favor dismissal, and since the defendant has failed to show that trial in this forum will be vexatious and oppressive out of all proportion to the plaintiff's convenience, this Court will not dismiss this case under the doctrine of *forum non conveniens.*

## CONCLUSION

For the reasons above, the defendant's motion to dismiss the complaint is denied.

SO ORDERED.